DECISION AND JOURNAL ENTRY
 INTRODUCTION {¶ 1} After a drug-sniffing dog alerted at the passenger side mirror of a car Kyle Kelling had parked in a church parking lot, police searched the car and found a loaded gun in the glove box. Mr. Kelling moved to suppress the gun, arguing that police officers illegally seized and detained him while they waited for the dog to show up at the parking lot. The trial court determined that police had a reasonable, articulable suspicion that Mr. Kelling had drugs in his car, which allowed them to detain him until the dog arrived and completed its sniff of the car. Accordingly, it denied his motion to suppress. He then pleaded no contest to improperly handling a firearm in a motor vehicle and, on appeal, has argued that the trial court incorrectly denied his motion to suppress. This Court has concluded that the trial court correctly denied Mr. Kelling's motion to suppress, although it has reached that conclusion for a different reason than the one relied upon by the trial court. Based on the evidence presented at the hearing on Mr. *Page 2 
Kelling's motion, this Court has determined that he was not seized and detained while officers waited for the dog.
 FACTS {¶ 2} At about 11:00 p.m. on an August evening, Officer Dan Hazek of the Montville Township Police Department turned his police cruiser off State Route 162 onto State Route 3. As he traveled south on Route 3, he saw Mr. Kelling and Kristin Hosack walking north on the other side of the road. There are no sidewalks in that area, and Mr. Kelling and Ms. Hosack were walking with traffic instead of against it. Officer Hazek testified that he was concerned for their safety. He was also aware that some businesses in the area had been burglarized in the preceding two years. He decided to turn around in a church parking lot about a quarter mile south of the Route 162 — Route 3 intersection and return to where he had seen Mr. Kelling and Ms. Hosack to investigate.
 {¶ 3} As Officer Hazek drove into the church lot, he noticed a car parked there. He knew that his fellow officer, Richard Percy, was also patrolling in the area, so he radioed him and asked him to investigate Mr. Kelling and Ms. Hosack while he took a closer look at the car. There were bandannas in the car and tied to its antenna and tailpipes, and the words "tha Candyman" were on its window. By looking through the windows, Officer Hazek was able to see a man's wallet, a woman's purse in the back seat, and a pair of brass knuckles in the center console of the front seat. He also saw a photograph of a white male, who he later determined was Mr. Kelling, on the floor. He touched the hood of the car, which he determined was still warm. Although the car was unlocked, he did not enter it.
 {¶ 4} In the meantime, Officer Percy had arrived in the area of the Route 162 — Route 3 intersection. He saw Mr. Kelling and Ms. Hosack still walking north on Route 3, approaching *Page 3 
the intersection. He pulled his cruiser into the parking lot of a business located at the intersection and got out. Mr. Kelling and Ms. Hosack walked over to where he was. Officer Percy asked them for identification, but they said they had left it in the car they were driving, which was parked in the church lot. He asked them what they were doing there, and they said they were meeting a man named Joe and then were going to return to their car and drive to Joe's house. They said Joe was supposed to be walking.
 {¶ 5} At about this time, Officer Hazek arrived, having completed his investigation of Mr. Kelling's car. Officer Percy asked Mr. Kelling why he would park his car in one parking lot and walk to another. Mr. Kelling responded that he thought it would be trespassing to park in the business lot. Officer Percy asked him what was different about parking in the church lot, and he did not have an answer.
 {¶ 6} Officer Percy asked if he and Officer Hazek could pat down Mr. Kelling and Ms. Hosack, and they agreed. Officer Percy patted down Mr. Kelling, and Officer Hazek patted down Ms. Hosack. They did not find anything. Officer Hazek then asked for permission to search their car, and Mr. Kelling refused permission. Officer Hazek told Mr. Kelling and Ms. Hosack that he was going to have a dog come and sniff their car. The officers then drove their cruisers back to the church lot, and Mr. Kelling and Ms. Hosack began walking back. Officer Hazek radioed for a dog to meet them at the church lot.
 {¶ 7} While Officers Percy and Hazek were waiting for the dog, two more officers in another cruiser arrived. When Mr. Kelling and Ms. Hosack arrived back at the church lot, therefore, there were three cruisers and four police officers there.
 {¶ 8} As Mr. Kelling and Ms. Hosack approached their car, Officer Hazek, walked up to them, meeting them about ten feet from their car. He testified at the suppression hearing that *Page 4 
he did not approach closer than eight to ten feet to them, never told them they were not free to go, and never pulled his gun. He again asked if he could search the car, and Mr. Kelling again told him no. Mr. Kelling told Officer Hazek that it was his father's car, that he had the bandannas on it because he liked them, and that Candyman was his nickname. He also told Officer Hazek that other members of his family sometimes drove the car and that he had friends who had a bad experience with law enforcement. Officer Hazek said that Mr. Kelling then engaged him in a conversation about Ohio's laws of possession and specifically about how you could be prosecuted for drugs found in a car you were driving even if the drugs belonged to someone else.
 {¶ 9} Mr. Kelling did give Officer Hazek permission to search his hooded sweatshirt, which apparently was in the car. Officer Hazek also asked Ms. Hosack if he could search her purse. She retrieved it from the car and allowed him to search it. He did not find anything significant in either the sweatshirt or the purse.
 {¶ 10} Approximately five minutes after Mr. Kelling and Ms. Hosack arrived back at the church lot, Sergeant James Cartwright, a canine officer with the Medina County Sheriffs Office, arrived at the lot with his dog, Mongo. Sergeant Cartwright testified that he received the request to respond at 11:20 p.m. and arrived at the lot at 11:29 p.m. Officer Hazek testified that he engaged in conversation with Mr. Kelling and Ms. Hosack during the entire time between their arrival back at the church lot and Mongo's arrival.
 {¶ 11} Sergeant Cartwright walked Mongo around Mr. Kelling's car, and Mongo alerted on the passenger side mirror. Officer Hazek searched the car. He found a small amount of marijuana, which he described as "[j]ust some shake," in the center console. The glove box was *Page 5 
locked, but Mr. Kelling gave him the key. Inside he found an air pistol and a loaded Taurus .25 caliber semi-automatic pistol. Mr. Kelling was arrested and provided Miranda warnings.
 DISCUSSION {¶ 12} Sergeant Cartwright, Officers Percy and Hazek, and another officer who was present at the time of Mr. Kelling's arrest all testified at the suppression hearing. Mr. Kelling neither testified nor called any other witness to testify on his behalf. The only version of the facts that was before the trial court, therefore, was the version testified to by the officers.
 {¶ 13} The trial court found that the encounter between Mr. Kelling and Officers Percy and Hazek in the business parking lot was a consensual encounter, and Mr. Kelling has not complained about that finding on appeal. It further found that, when Mr. Kelling and Ms. Hosack returned to the church lot, police seized them, but that their seizure was justified because the officers had a reasonable, articulable suspicion that they were engaged in illegal activity.
 {¶ 14} "[A] person has been `seized' within the meaning of the Fourth Amendment only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." California v. Hodari D., 499 U.S. 621, 627-28 (1991) (quotingUnited States v. Mendenhall, 446 U.S. 544, 554 (1980)). InMendenhall, Justice Stewart listed examples of circumstances that might indicate a seizure even when the person had not attempted to leave: "threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled." Mendenhall, 446 U.S. at 554. There was no evidence before the trial court that Mr. Kelling tried to leave the church lot before the drug sniff. The issue, therefore, is whether the surrounding circumstances would have convinced a reasonable person that he was not free to leave. *Page 6 
 {¶ 15} As mentioned, when Mr. Kelling and Ms. Hosack arrived back at the church lot, the two officers with whom they had spoken at the business lot had been joined by two other officers. Sometime prior to Sergeant Cartwright arriving with Mongo, yet another officer arrived in another cruiser. Once Sergeant Cartwright arrived, therefore, there were six officers and five cruisers at the church lot.
 {¶ 16} Admittedly, the number of officers and cruisers at the church lot and the fact that Officer Hazek told Mr. Kelling and Ms. Hosack that he was going to have a dog come and sniff their car make the question of whether the surrounding circumstances would have convinced a reasonable person in Mr. Kelling's position that he was not free to leave a close one. This Court has concluded, however, based on all the circumstances, that a reasonable person in Mr. Kelling's position would have understood that he was free to leave.
 {¶ 17} To begin with, Officers Percy and Hazek had left Mr. Kelling and Ms. Hosack in the business lot to walk back to their car rather than placing them in their cruisers and driving them back. That would have indicated to a reasonable person that, at least at that point, they had not been seized. Further, when Officers Percy and Hazek arrived back at the church lot, they parked their cruisers about 40 feet away from Mr. Kelling's car, not using them to block either his car or the driveway from the church lot. There is no indication that any of the other officers parked closer to Mr. Kelling's car or blocked the driveway. Only Officer Hazek approached Mr. Kelling, and he testified that he was between eight and ten feet away as he talked to him. No officer drew his or her gun, and there was no evidence that any officer said anything to indicate to Mr. Kelling and Ms. Hosack that they were not free to leave. Officer Hazek asked permission to search the car and Ms. Hosack's purse. Mr. Kelling recognized that he was free to refuse permission for a search of the car, because he did just that. Officer Hazek and Mr. Kelling *Page 7 
engaged in conversation during the entire five minutes or so between when Mr. Kelling and Ms. Hosack returned to the church lot and when Sergeant Cartwright arrived with Mongo, and Mr. Kelling was not too intimidated to explain to Officer Hazek his understanding of Ohio's drug possession laws. Based on all the circumstances, this Court has concluded that Mr. Kelling was not seized until after Mongo alerted on his car.
 {¶ 18} Once Mongo alerted on Mr. Kelling's car, the officers had probable cause to search, at a minimum, the area of the car near where he had alerted. State v. White, 175 Ohio App. 3d 302, 2008-Ohio-657, at ¶ 15. Mongo alerted on the passenger side mirror, and Officer Hazek found the gun in the glove box. The trial court correctly denied Mr. Kelling's motion to suppress.
 CONCLUSION {¶ 19} Mr. Kelling's assignment of error is overruled. The judgment of the Medina County Common Pleas Court is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App. R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App. R. 22(E). The Clerk of the Court of Appeals is *Page 8 
instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App. R. 30.
Costs taxed to appellant.
 WHITMORE, J. MOORE, P. J. CONCUR *Page 1