[Cite as *State v. Helmick*, 2014-Ohio-4187.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| STATE OF OHIO | C.A. No. 27179 |
|---|---|
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| JEREMY S. HELMICK | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellant | CASE No. CR 12 02 0361 |

DECISION AND JOURNAL ENTRY

Dated: September 24, 2014

WHITMORE, Judge.

{¶1} Appellant, Jeremy S. Helmick, appeals from the judgment of the Summit County Court of Common Pleas. This Court affirms.

I

{¶2} On the evening of February 3, 2012, Akron Police Officer Jeffrey Woolley and his partner entered a Burger King parking lot while on patrol. According to Officer Woolley, there had been drug problems in that particular parking lot for the past six months. The officers observed Helmick's car parked away from the restaurant. Officer Woolley parked his cruiser in the spot next to Helmick. Officer Woolley walked up to the driver's side of Helmick's car while his partner walked up to the passenger's side. Upon approaching Helmick, they observed him rolling a marijuana cigarette in his lap. Officer Woolley asked Helmick to step out of his car and if he had anything sharp or illegal on him. Helmick responded that he had methamphetamine in

his right pants pocket. Officer Woolley, then, retrieved a wrapped-up substance from Helmick's pocket. The substance field tested positive for methamphetamine.

{¶3} The grand jury indicted Helmick for aggravated possession of drugs, namely a schedule II controlled substance, methamphetamine. This charge is a fifth-degree felony. The grand jury also indicted Helmick for possession of marijuana, a minor misdemeanor. Helmick pled not guilty and filed a motion to suppress arguing: (1) the officers lacked a reasonable, articulable suspicion of criminal activity when they approached him in the Burger King parking lot; and (2) they had no justifiable reason to remove Helmick from his vehicle as possession of marijuana is a non-arrestable offense. The State responded that the initial encounter was consensual and that possession of drug paraphernalia, in the form of the rolling papers, was an arrestable offense.

{¶4} The trial court denied the motion to suppress, and Helmick changed his plea to no contest. Helmick was convicted of aggravated possession of drugs and possession of marijuana. The court sentenced Helmick to 24 months of community control and suspended his driver's license for 6 months on the aggravated possession of drugs count. The court imposed a $100 fine for the possession of marijuana count.

{¶5} Helmick now appeals and raises three assignments of error for our review.

II

Assignment of Error Number One

THE TRIAL COURT ERRED WHEN IT DENIED HELMICK'S MOTION TO SUPPRESS EVIDENCE, MERITING REVERSAL.

{¶6} In his first assignment of error, Helmick argues that he was seized from the time the officers first approached his vehicle. He further argues that he was seized, but not arrested,

when a search yielded the methamphetamine from his pocket. Consequently, according to Helmick, the evidence obtained against him should have been suppressed. We disagree.

{¶7} Our "review of a motion to suppress presents a mixed question of law and fact." *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8. Because the trial court is "in the best position to resolve factual questions and evaluate the credibility of witnesses[, we] must accept the trial court's findings of fact if they are supported by competent, credible evidence." (Internal citations omitted.) *Id.* We review the "application of the law to those facts de novo." *State v. Llanderal-Raya*, 9th Dist. Medina No. 04CA0079-M, 2005-Ohio-3306, ¶ 19.

## Approach of a Parked Vehicle

{¶8} The Fourth Amendment to the United States Constitution protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." The Fourth Amendment, however, does not seek "to eliminate all contact between the police and the citizenry." *United States v. Mendenhall*, 446 U.S. 544, 553 (1980). There are three distinct types of encounters between police officers and the public: (1) a consensual encounter, (2) an investigatory stop, and (3) an arrest. *Llanderal-Raya* at ¶ 20. "Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred." *Terry v. Ohio*, 392 U.S. 1, 19 (1968), fn. 16.

{¶9} Consensual encounters are not seizures and do not implicate the Fourth Amendment. *Llanderal-Raya* at ¶ 20, citing *Akron v. Harvey*, 9th Dist. Summit No. 20016, 2000 WL 1859838 (Dec. 20, 2000). During a consensual encounter, police approach a person in a public place, engage in conversation, and the individual remains free to leave. *Id.* The encounter may become non-consensual if the police officer by physical force or a show of authority

restrains the person's liberty so that a reasonable person would not feel free to terminate the encounter. *Id.*

{¶10} An investigatory stop is more intrusive than a consensual encounter but less intrusive than a formal custodial arrest. *Id.* An officer must have a reasonable, articulable suspicion of criminal activity for an investigatory stop. *Id.* Finally, officers must have probable cause for any seizure that "equivocates an arrest." *Id.* "[T]he threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person * * *, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled" can be indicative of a seizure. *Mendenhall* at 554.

{¶11} "The mere approach and questioning of persons seated within parked vehicles does not constitute a seizure so as to require reasonable suspicion supported by specific articulable facts." *State v. McCray*, 9th Dist. Lorain No. CA99CA007310, 2000 WL 254909, *1 (Mar. 8, 2000), quoting *State v. Johnston*, 85 Ohio App.3d 475, 478 (4th Dist.1993). *See also Cuyahoga Falls v. Sandstrom*, 9th Dist. Summit No. 17000, 1995 WL 366486, *3 (June 21, 1995). But, "if an officer positions his vehicle so that a person cannot exit a parking lot without asking the officer to move, the officer has exhibited a show of authority constituting a seizure." *State v. Maitland*, 9th Dist. Summit No. 25823, 2011-Ohio-6244, ¶ 6.

{¶12} Helmick argues that he was "seized" when the officers approached his car as no reasonable person would feel free to leave "[t]his traffic stop." We disagree. The officers did not "stop" Helmick as his car was already parked in the Burger King parking lot. *See Llanderal-Raya*, 2005-Ohio-3306, at ¶ 22. Officer Woolley parked beside Helmick, not behind him. Officer Woolley did not position his cruiser in such a way that Helmick's egress was blocked.

Nor is there any indication that Officer Woolley activated his lights or sirens or otherwise indicated that Helmick was not free to leave.

{¶13} Helmick contends the presence of two officers approaching the vehicle, one on the driver's side and the other on the passenger's side, "effectuate[d] a stop." Helmick focuses on the fact that "*two* officers" were present. (Emphasis sic.). By itself, the presence of two officers does not transform the encounter into a seizure. *See State v. Kelling*, 9th Dist. Medina No. 07CA0056-M, 2008-Ohio-6935, ¶ 15-17 (examining the surrounding circumstances and concluding that a reasonable person would have felt free to leave despite the presence of six officers and five cruisers). Nor can we say the procedure used by the officers in making the approach transformed the encounter into a seizure. After parking next to Helmick, the officers approached on foot. Officer Woolley testified the officers approached the vehicle on either side to help ensure officer safety. It is not only reasonable, but prudent, for officers to take safety precautions when approaching citizens. There is no indication that the officers displayed their weapons or made any other display of authority indicating that Helmick was not free to leave.

{¶14} Officer Woolley conceded that he would have been fairly upset if Helmick had "just put the car in reverse and driven away[,]" but "at that point [he] was free to leave." Neither the position of the cruiser, nor the position or actions of the officers would have caused a reasonable person to feel that he was not free to terminate the encounter as the officers approached Helmick's parked car. Helmick was not seized within the meaning of the Fourth Amendment at that time. Consequently, based upon the limited argument concerning the significance of the approach of two officers toward his vehicle, the trial court did not err by denying Helmick's motion to suppress as it relates to the marijuana and rolling papers observed in his lap when the officers approached his parked car.

**Search Incident to Arrest**

{¶15} While Helmick argues on appeal that the search of Helmick's person was not a search incident to arrest, he did not make this argument below. Thus, the trial court did not have the opportunity to consider it in the first instance and he has forfeited this argument for purposes of this appeal. *See State v. Carrigan,* 9th Dist. Summit No. 21612, 2004-Ohio-827, ¶ 14-15.

{¶16} In the trial court, Helmick asserted that the police lacked probable cause to remove him from the car and then search him because possession of marijuana was not an arrestable offense. The trial court concluded that officers possessed probable cause to arrest Helmick because what the officers observed gave them reason to believe that Helmick possessed drug paraphernalia, an offense for which he could be arrested. Helmick has not challenged this conclusion on appeal. Accordingly, we affirm the trial court's judgment. *See id.* at ¶ 15.

{¶17} Helmick's first assignment of error is overruled.

Assignment of Error Number Two

HELMICK'S CONVICTION OUGHT TO BE REVERSED BECAUSE HE WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL GUARANTEED HIM BY THE SIXTH AMENDMENT TO THE UNITED STATES CONSTITUTION.

{¶18} In his second assignment of error, Helmick argues that his trial counsel was ineffective for failing to move to suppress his statement that he had "some meth in his pocket" and the methamphetamine that was found thereafter. We disagree.

{¶19} To prove ineffective assistance of counsel, Helmick must establish that (1) his counsel's performance was deficient and (2) that but for counsel's deficient performance there is a reasonable probability that the result of the trial would have been different. *Strickland v. Washington*, 466 U.S. 668, 687, 694 (1984). The "failure to file a suppression motion does not constitute per se ineffective assistance of counsel." *State v. Madrigal*, 87 Ohio St.3d 378, 389

(2000), quoting *Kimmelman v. Morrison*, 477 U.S. 365, 384 (1986). "In order to demonstrate that his lawyer's performance was deficient, a defendant must establish that a valid basis existed to suppress the evidence." *State v. Oliver*, 9th Dist. Summit No. 24500, 2009-Ohio-2680, ¶ 7.

**{¶20}** On appeal, Helmick claims that Officer Woolley "asked him whether he had 'anything illegal on him' without notifying him of his Miranda rights." (Emphasis omitted.). But there is no evidence regarding Miranda warnings in the record for us to review. Officer Woolley, who was the only witness at the suppression hearing, testified regarding his approach of Helmick's parked car, his observations following the approach, his decision to arrest Helmick, and the search incident thereto. At no point was he asked, by defense counsel, the prosecutor, or the court, whether he advised Helmick of his Miranda rights. Consequently, the record before us does not indicate whether or not Helmick received his Miranda warnings. We are unable to determine on a direct appeal whether an attorney was ineffective, where the claim is based on allegations outside of the record. *Oliver* at ¶ 16; s*ee also State v. West*, 9th Dist. Summit No. 25434, 2011-Ohio-5476, ¶ 23 (noting that a petition for postconviction relief would be a more appropriate avenue to pursue where evidence to support an argument is outside the record).

**{¶21}** Helmick's second assignment of error is overruled.

### Assignment of Error Number Three

> BEFORE IT SENTENCED [HELMICK], THE TRIAL COURT FAILED TO PERFORM THE ANALYSIS REQUIRED UNDER *STATE V. JOHNSON* TO DETERMINE WHETHER [HELMICK'S] OFFENSES WERE ALLIED OFFENSES OF SIMILAR IMPORT, MERITING REMAND TO THE TRIAL COURT FOR A NEW SENTENCING HEARING.

**{¶22}** In his third assignment of error, Helmick argues that this case should be remanded for an allied offenses determination. The State concedes that it should be remanded for resentencing. We disagree.

{¶23} Given the "dramatic shift in the law of allied offenses[]" that the Supreme Court's opinion in *State v. Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314, represented, it has been the policy of this Court to remand cases to the trial court where the record evidenced, either affirmatively or by absence, that the trial court failed to consider *Johnson* at the time of sentencing. *E.g., State v. Cleland,* 9th Dist. Medina No. 12CA0018-M, 2012-Ohio-5016, ¶ 4; *State v. Ziemba,* 9th Dist. Summit No. 25886, 2012-Ohio-1717, ¶ 23. Thus, we understand why the State has conceded with respect to Helmick's argument.

{¶24} While the trial court still has the duty to consider whether offenses are allied at the time of sentencing, and cannot impose multiple convictions for the same conduct, *see State v. Underwood,* 124 Ohio St.3d 365, 2010-Ohio-1, ¶ 27, given the time that has passed since *Johnson,* under certain circumstances, we now conclude that a remand to the trial court is unnecessary, even where the trial court failed to consider *Johnson*. Where it is apparent from the face of the record that the convictions at issue could not merge, this Court sees no reason to remand the matter for the trial court to consider *Johnson* when its failure to do so clearly constituted harmless error. Accordingly, we examine Helmick's argument in that framework.

{¶25} We begin by noting that the Supreme Court has held that the "imposition of multiple sentences for allied offenses of similar import is plain error." *Underwood* at ¶ 31. Accordingly, irrespective of whether the defendant objected at sentencing, the trial court's failure to merge convictions that are allied would constitute plain error. Regarding multiple counts in an indictment, R.C. 2941.25 provides:

> (A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

In order to determine whether two offenses are allied offenses of similar import, the court first determines "whether it is possible to commit one offense *and* commit the other with the same conduct." (Emphasis sic.) *Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314, at ¶ 48. If so, then the court determines "whether the offenses were committed by the same conduct." *Id*. at ¶ 49. Both the above questions must be answered in the affirmative for the offenses to be allied offenses of similar import in a given case. *Id.* at ¶ 50. But, "if the court determines that the commission of one offense will *never* result in the commission of the other, or if the offenses are committed separately, of if the defendant has separate animus for each offense, then, according to R.C. 2941.25(B), the offenses will not merge." (Emphasis sic.) *Id.* at ¶ 51.

{¶26} Generally, "[c]rimes relating to different controlled substances are of dissimilar import and do not merge." *State v. Williams*, 4th Dist. Scioto No. 11CA3408, 2012-Ohio-4693, ¶ 85; *see also State v. Jones*, 9th Dist. Wayne No. 12CA0024, 2012-Ohio-6150, ¶ 46-47. Under R.C. 2925.11(C), drug possession offenses are classified and penalized based on the type and quantity of the controlled substance involved. *State v. Brown*, 3d Dist. Allen No. 1-10-31, 2011-Ohio-1461, ¶ 38. Where "each violation of R.C. 2925.11 requires proof of the identity of a different drug that was possessed * * * 'the legislature intended the possession of the different drug groups to constitute different offenses.'" *State v. Huber*, 2d Dist. Clark No. 2010-CA-83, 2011-Ohio-6175, ¶ 7, quoting *State v. Delfino*, 22 Ohio St.3d 270, 274 (1986).

{¶27} In the instant matter, Helmick was indicted for possession of two different controlled substances, which carried two different penalties. Count one of the indictment

charged Helmick with aggravated possession of drugs "in that he did knowingly obtain, possess, or use a drug, Methamphetamine, a Schedule II controlled substance." Possession of a schedule II drug is a fifth-degree felony.[1] R.C. 2925.11(C)(1)(a). Count two of the indictment charged Helmick with possession of marijuana. Possession of marijuana is a minor misdemeanor.[2] R.C. 2925.11(C)(3)(a). Given the facts of this case, it is evident from the face of the record that Helmick's convictions are not allied and not subject to merger. Accordingly, there is no need to remand the matter to the trial court for it to consider *Johnson* in the first instance.

{¶28} Helmick's third assignment of error is overruled.

III

{¶29} Helmick's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is

---

[1] When amounts not applicable to the instant appeal are involved, the offense level is higher. *See* R.C. 2925.11(C)(1)(b) to (e).

[2] When amounts not applicable to the instant appeal are involved, the offense level is higher. *See* R.C. 2925.11(C)(3)(b) to (g).

instructed to mail a notice of entry of this judgment to the parties and to make a notation of the

mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

BETH WHITMORE
FOR THE COURT

BELFANCE, P. J.
CONCURS.

CARR, J.
CONCURS IN JUDGMENT ONLY.

APPEARANCES:

JACQUENETTE S. CORGAN, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and RICHARD S. KASAY, Assistant Prosecuting Attorney, for Appellee.