[Cite as *State v. Martin*, 2018-Ohio-1705.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| STATE OF OHIO | C.A. No. 28722 |
|---|---|
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| JOSEPH MARTIN | STOW MUNICIPAL COURT COUNTY OF SUMMIT, OHIO |
| Appellant | CASE No. 2016TRC9516 |

DECISION AND JOURNAL ENTRY

Dated: May 2, 2018

CALLAHAN, Judge.

{¶1} Defendant-Appellant, Joseph Martin, appeals from the judgment of the Stow Municipal Court, denying his motions to suppress. This Court affirms.

I.

{¶2} Late one evening, Officer Max Westfall responded to Akron-Peninsula Road based on a report that a female had jumped from a moving car. Upon his arrival, he found Mr. Martin on the roadside next to the injured female, who had been the only passenger in the car Mr. Martin had been driving. Officer Westfall spoke with Mr. Martin and detected a strong odor of alcohol coming from his person. Because he also detected several other indicia of impairment and Mr. Martin admitted that he had been drinking, he asked Mr. Martin to submit to field sobriety testing and a portable breath test. Mr. Martin, however, refused both tests. Based on the strong odor of alcohol he detected, the other indicia of impairment he observed, Mr. Martin's

admission to drinking alcohol, and his refusal to undergo sobriety tests, Officer Westfall then arrested Mr. Martin.

{¶3} After arresting Mr. Martin, Officer Westfall transported him to the Richfield Police Department so that a breath test could be administered. Mr. Martin initially refused to take that test as well, but agreed after Officer Westfall and another officer explained the consequences that could result from his refusal. It was then determined that Mr. Martin had a blood alcohol level of .172.

{¶4} Mr. Martin was charged with two counts of operating a vehicle under the influence of alcohol ("OVI"), in violation of R.C. 4511.19(A)(1)(a) and 4511.19(A)(1)(h). He filed several motions to suppress, and the court held a hearing on his motions. Following the hearing, the court denied the motions, and Mr. Martin pleaded no contest to the charges. The court sentenced him to 90 days in jail, a year of community control, a fine, and a license suspension.

{¶5} Mr. Martin now appeals and raises one assignment of error for this Court's review.

II.

**ASSIGNMENT OF ERROR**

THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT BY DENYING HIS MOTIONS TO SUPPRESS EVIDENCE.

{¶6} In his sole assignment of error, Mr. Martin argues that the trial court erred by denying his motions to suppress. He argues that his motions had merit because Officer Westfall lacked reasonable suspicion to detain him for field sobriety testing, lacked probable cause to arrest him, and implied coercive tactics when obtaining his consent to submit to a breath test. This Court does not agree that the trial court erred when it denied the motions to suppress.

{¶7} A motion to suppress evidence presents a mixed question of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8. "When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses." *Id.*, citing *State v. Mills*, 62 Ohio St.3d 357, 366 (1992). Thus, a reviewing court gives deference to and "must accept the trial court's findings of fact if they are supported by competent, credible evidence." *Burnside* at ¶ 8, citing *State v. Fanning*, 1 Ohio St.3d 19, 20 (1982). "Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." *Burnside* at ¶ 8, citing *State v. McNamara*, 124 Ohio App.3d 706, 710 (4th Dist.1997).

**Reasonable Suspicion to Detain**

{¶8} "Encounters with police span a continuum from consensual encounters to investigatory stops to seizures tantamount to an arrest." *State v. Mason*, 9th Dist. Summit No. 27715, 2016-Ohio-7081, ¶ 20. "A 'minimal intrusion of simple questioning of a person not in custody does *not* constitute a 'seizure' requiring Fourth Amendment protection.'" (Emphasis sic.) *State v. Curran*, 9th Dist. Medina No. 16CA0021-M, 2016-Ohio-8502, ¶ 9, quoting *State v. Robinette*, 80 Ohio St.3d 234, 240 (1997). If a consensual encounter becomes an investigatory detention, however, the detention is constitutional only if it is supported by reasonable suspicion. *See Curran* at ¶ 9. *Accord State v. Helmick*, 9th Dist. Summit No. 27179, 2014-Ohio-4187, ¶ 9-10. "'[R]easonable suspicion exists if an officer can point to specific and articulable facts indicating that [an individual] may be committing a criminal act.'" *State v. Osburn*, 9th Dist. Wayne No. 07CA0054, 2008-Ohio-3051, ¶ 9, quoting *Wadsworth v. Engler*, 9th Dist. Medina No. 2844-M, 1999 Ohio App. LEXIS 5993, *9 (Dec. 15, 1999). "Reasonable suspicion is based

on the totality of the circumstances." *State v. Hochstetler*, 9th Dist. Wayne No. 16AP0013, 2016-Ohio-8389, ¶ 10.

{¶9} The trial court found that Officer Westfall first made contact with Mr. Martin when he responded to the scene of an accident. The accident involved Mr. Martin's passenger, who had apparently jumped from their moving car as Mr. Martin was driving. The court found that, while investigating the accident, Officer Westfall surmised that both Mr. Martin and his injured passenger had recently consumed alcohol. Specifically, the court found that Mr. Martin admitted he had consumed alcohol and "demonstrated physical indicia of over consumption." Because Officer Westfall wished to investigate further, he continued to detain Mr. Martin and asked him to undergo field sobriety testing. By denying Mr. Martin's motions to suppress, the court rejected his argument that Officer Westfall lacked reasonable suspicion to conduct an investigatory detention.

{¶10} Mr. Martin does not take issue with any particular factual finding that the trial court made. Instead, he argues that the court erred as a matter of law when it denied his motions to suppress. He notes that there was no evidence he drove in an unsafe manner, had any difficulty with his speech, or struggled when responding to questions. Accordingly, he argues that Officer Westfall lacked reasonable suspicion to detain him after their initial encounter.

{¶11} Upon review, this Court accepts the trial court's factual findings as true. *See Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, at ¶ 8. Officer Westfall testified that he responded to Akron-Peninsula Road based on reports that Mr. Martin's passenger had jumped from their moving car. When he arrived on scene, Mr. Martin was with the injured passenger, who was lying on the roadside about fifty feet from their car. He testified that he detected a "strong odor of alcohol" in their vicinity and, when paramedics arrived, he and Mr. Martin

walked back over to the car Mr. Martin had been driving. While speaking with Mr. Martin, Officer Westfall continued to detect a strong odor of alcohol coming from his person, so he asked Mr. Martin how much he had had to drink. Mr. Martin then replied that he had "had three within the last two hours." Officer Westfall noted that Mr. Martin had red and watery eyes and was swaying back and forth during their conversation. He testified that, in his experience, Mr. Martin exhibited signs of impairment. Because his testimony serves as competent, credible evidence in support of the trial court's factual findings, this Court accepts those factual findings and considers them in light of the applicable legal standard. *See id.*

{¶12} As noted, when a consensual encounter later results in an investigatory detention, that detention must be supported by reasonable suspicion. *See Curran*, 2016-Ohio-8502, at ¶ 9. *See also State v. Sunday*, 9th Dist. Summit No. 22917, 2006-Ohio-2984, ¶ 30 (officer must have reasonable suspicion to conduct field sobriety testing). "This Court has held that even a mild odor of alcohol can provide reasonable suspicion for field sobriety testing when paired with other factors * * *." *State v. High*, 9th Dist. Medina No. 17CA0019-M, 2017-Ohio-8264, ¶ 14. Here, Officer Westfall detected a strong odor of alcohol coming from Mr. Martin and saw that he was swaying back and forth and had red, watery eyes. Moreover, Mr. Martin admitted that he had consumed three alcoholic beverages within the last two hours. The combination of his admission and the observations that Officer Westfall made "was sufficient to provide [the officer] with reasonable suspicion to detain [Mr. Martin] to investigate a possible violation of Ohio's laws prohibiting [OVI]." *State v. Tomko*, 9th Dist. Summit No. 19253, 1999 Ohio App.LEXIS 5133, *9 (Nov. 3, 1999). *See also State v. Osburn*, 2008-Ohio-3051, at ¶ 9. Accordingly, this Court rejects Mr. Martin's argument to the contrary.

**Probable Cause to Arrest**

{¶13} "[I]n [OVI] prosecutions, the [S]tate is not required to establish that a defendant was actually impaired while driving, but rather, need only show an impaired driving ability." *State v. Slone*, 9th Dist. Medina No. 04CA0103-M, 2005-Ohio-3325, ¶ 9. An officer has probable cause to arrest an individual for impaired driving if, "at the time of arrest, the officer had sufficient facts derived from a reasonably trustworthy source to cause a prudent person to believe the suspect was driving under the influence." *State v. Hopp*, 9th Dist. Summit No. 28095, 2016-Ohio-8027, ¶ 8. "This inquiry requires consideration of the totality of the circumstances known to the officer at the time of arrest." *State v. Rogers*, 9th Dist. Wayne No. 16AP0014, 2017-Ohio-357, ¶ 9. The State may rely "'on physiological factors (e.g., odor of alcohol, glossy or bloodshot eyes, slurred speech, confused appearance) to demonstrate that a person's physical and mental ability to drive was impaired.'" *Slone* at ¶ 9, quoting *State v. Holland*, 11th Dist. Portage No. 98-P-0066, 1999 Ohio App. LEXIS 6143, *14 (Dec. 17, 1999). "'Virtually any lay witness, without special qualifications, may testify as to whether or not an individual is intoxicated.'" *State v. Zentner*, 9th Dist. Wayne No. 02CA0040, 2003-Ohio-2352, ¶ 19, quoting *State v. Delong*, 5th Dist. Fairfield No. 02 CA 35, 2002-Ohio-5289, ¶ 60.

{¶14} The trial court determined that Officer Westfall had probable cause to arrest Mr. Martin based on the totality of the circumstances. Those circumstances included Mr. Martin's admission to having consumed alcohol, the signs of impairment he exhibited, and the fact that he refused to participate when Officer Westfall attempted to investigate further. This Court has already determined that the record supports the trial court's findings that Mr. Martin admitted drinking alcohol and exhibited signs of impairment. As to its finding that Mr. Martin refused to participate in Officer Westfall's investigation, this Court likewise concludes that the trial court's finding is based on competent, credible evidence. Officer Westfall testified that Mr. Martin

refused field sobriety testing, claiming he was too upset, and refused a portable breath test on the basis that "he would be over [the limit]." Thus, the record supports the trial court's findings, and this Court accepts them as true. *See Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, at ¶ 8.

{¶15} Upon review, this Court must conclude that Officer Westfall had probable cause to arrest Mr. Martin for an OVI. Based on his extensive training and experience, Officer Westfall testified that Mr. Martin was intoxicated and unfit to operate a motor vehicle. *See Zentner* at ¶ 19, quoting *Delong* at ¶ 60. There was evidence that Mr. Martin admitted to consuming "three within the last two hours" and otherwise exhibited several physiological indicators of impairment, including a strong odor of alcohol, red eyes, and an inability to stop swaying while speaking with Officer Westfall. *See Slone* at ¶ 9, quoting *Holland* at *14. He also refused to take a breath test on the basis that "he would be over." *See State v. Filip*, 9th Dist. Medina No. 16CA0049-M, 2017-Ohio-5622, ¶ 39 (suspect's refusal to submit to breath test probative of his impairment). The totality of the circumstances support the conclusion that Officer Westfall had probable cause to believe Mr. Martin was driving under the influence. *See Hopp* at ¶ 8. As such, this Court rejects Mr. Martin's argument to the contrary.

**Consent to Breath Testing**

{¶16} "As part of obtaining the privilege to drive in Ohio, a driver implicitly consents to a search, through means of a chemical test, to determine the amount of intoxicating substances in the driver's body, upon the driver's arrest for [OVI]." *State v. Hoover*, 123 Ohio St.3d 418, 2009-Ohio-4993, ¶ 14. *Accord State v. Hamrick*, 9th Dist. Lorain No. 16CA010935, 2017-Ohio-4211, ¶ 7, citing R.C. 4511.191(A)(2). The implied consent statute, as it applied to Mr. Martin at

the time of his arrest,[1] required law enforcement officers to ask him to submit to a chemical test of his "whole blood, blood serum or plasma, breath, or urine * * *."  Former 4511.191(A)(5)(a).  The statute provided, in relevant part:

> A law enforcement officer who makes a request * * * that a person submit to a chemical test * * * is not required to advise [him] of the consequences of submitting to, or refusing to submit to, the test * * * and is not required to give [him] the form described in [R.C. 4511.192(B)], but the officer shall advise [him] at the time of the arrest that if [he] refuses to take a chemical test the officer may employ whatever reasonable means are necessary to ensure that [he] submits to a chemical test of [his] whole blood or blood serum or plasma.

*Id.*  "The Ohio Supreme Court has determined that the implied consent statute is constitutional, violating neither the search and seizure requirements of the Fourth Amendment nor the Fifth Amendment right against self-incrimination."  *State v. Walters*, 9th Dist. Medina No. 11CA0039-M, 2012-Ohio-2429, ¶ 20, citing *Hoover* at ¶ 17.

{¶17}  The trial court found that, after his arrest, Mr. Martin was taken to the Richfield Police Department so that a breath test could be administered.  After officers read him a BMV Form 2255, he initially refused to submit to the test.  The trial court found that Officer Westfall then informed Mr. Martin that he might be subject "to higher degrees of crime" if they had to transport him to the hospital for a blood test.  Following further discussion, Mr. Martin consented to the breath test.  The trial court found that his breath sample was not obtained as a result of coercion.  The court, therefore, refused to suppress the results of the breath test.

{¶18}  Mr. Martin argues that the trial court erred by not suppressing the results of his breath test because he did not voluntarily submit to the test.  According to Mr. Martin, he only submitted to the test as a result of coercive measures that the police employed; namely,

---

[1] Mr. Martin does not dispute that Former R.C. 4511.191(A)(5)(a) was applicable to him because, at the time of his arrest, he had already been convicted of two OVIs within a six-year period.  *See* Former R.C. 4511.191(A)(5)(a) and 4511.19(G)(1)(c).

threatening to charge him with additional crimes. He relies heavily on *Birchfield v. North Dakota*, 579 U.S. ___, 136 S.Ct. 2160 (2016), to support the proposition that his Fourth Amendment rights were violated when he was compelled to take the breath test.

{¶19} In *Birchfield*, the United States Supreme Court considered "whether motorists lawfully arrested for drunk driving may be convicted of a crime or otherwise penalized for refusing to take a warrantless test measuring the alcohol in their bloodstream." *Birchfield* at 2172. The Supreme Court determined that motorists "cannot be deemed to have consented to submit to *a blood test* on pain of committing a criminal offense" due to the fact that blood tests are invasive and implicate significant privacy concerns. (Emphasis added.) *Id.* at 2184-2186. The Supreme Court also held, however, that "the Fourth Amendment permits warrantless breath tests * * *" because "[t]he impact of breath tests on privacy is slight * * *." *Id.* at 2184. Additionally, the Supreme Court noted that its decision only pertained to implied consent statutes that imposed *criminal penalties* for chemical test refusals. *Id.* at 2185. It specified that its opinion should not be read to cast doubt on prior opinions that "referred approvingly to the general concept of implied-consent laws that impose civil penalties and evidentiary consequences on motorists who refuse to comply." *Id.*

{¶20} Though Mr. Martin attempts to rely on *Birchfield*, he was not criminally charged with a refusal to undergo chemical testing. *Compare id.* at 2170-2172. The results of his chemical test simply would have had evidentiary consequences for him in the prosecution of his OVI conviction. *See id.* at 2185. Moreover, he submitted to a breath test, not a blood test. *Compare id.* at 2186. The *Birchfield* Court specifically drew a distinction between blood tests and breath tests and found that "the Fourth Amendment permits warrantless breath tests * * *."

*Id.* at 2184. Accordingly, while he relies upon *Birchfield*, the case actually bodes against his argument on appeal.

**{¶21}** Although the trial court found that Mr. Martin's breath sample was not obtained as a result of coercion, this Court need not determine whether Mr. Martin voluntarily or involuntarily submitted to his breath test. *See State v. Mason*, 9th Dist. Summit No. 27715, 2016-Ohio-7081, ¶ 25 ("An appellate court shall affirm a legally correct judgment, including the denial of a motion to suppress, even if the trial court's reasoning was flawed."). That is because, even assuming he was compelled to take the test, Mr. Martin had no constitutional right to refuse it. *See Hoover*, 2009-Ohio-4993, at ¶ 22. *See also Birchfield* at 2184. Officers were authorized to require him to submit to a breath test. *See Hoover* at ¶ 22; *Birchfield* at 2184. Accordingly, this Court rejects his argument to the contrary. Mr. Martin's assignment of error is overruled.

III.

**{¶22}** Mr. Martin's assignment of error is overruled. The judgment of the Stow Municipal Court is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Stow Municipal Court, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the

period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

LYNNE S. CALLAHAN
FOR THE COURT

HENSAL, P. J.
TEODOSIO, J.
CONCUR

APPEARANCES:

HECTOR G. MARTINEZ, JR., and LESLIE S. JOHNS, Attorneys at Law, for Appellant.

AMBER K. ZIBRITOSKY, Law Director, for Appellee.