[Cite as *State v. Gonzalez*, 2019-Ohio-1928.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF MEDINA | ) | |

| | |
|---|---|
| STATE OF OHIO | C.A. No.    18CA0072-M |
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| DAVID J. GONZALES | COURT OF COMMON PLEAS COUNTY OF MEDINA, OHIO |
| Appellant | CASE No.    17CR0977 |

## DECISION AND JOURNAL ENTRY

Dated: May 20, 2019

TEODOSIO, Presiding Judge.

{¶1}   Appellant, David J. Gonzales, appeals from his conviction for aggravated possession of drugs in the Medina County Court of Common Pleas.  This Court affirms.

I.

{¶2}   A Montville police officer, working in his capacity as a Medina County reserve sheriff's deputy, was following a vehicle on I-76 in Medina.  He ran the vehicle's license plate number and continued to follow it as it exited the highway and eventually parked at a business in Wadsworth.  The officer parked some distance away from the vehicle and approached on foot to speak to the three occupants, including Mr. Gonzales.  According to the officer, within seconds he noticed fresh needle punctures in Mr. Gonzales' arm and in the front passenger's ("B.G.'s") neck.  B.G.'s neck was also "oozing blood" from one of the punctures.

{¶3}   The officer obtained the passengers' information and discovered that B.G. had an active warrant for her arrest in Summit County.  Another officer soon arrived and walked his K-9

Unit around the vehicle. The dog alerted to the presence of narcotics in the vehicle, but the driver ("D.S.") also consented to a search of his vehicle. Dispatch soon confirmed the warrant for B.G.'s arrest. A search of the vehicle revealed a needle containing heroin under the front seat, an eyeglasses case containing needles, cotton, spoons, and other drug paraphernalia on the rear floor, and a methamphetamine pipe in the trunk.

{¶4} Mr. Gonzales was charged with aggravated possession of drugs, a felony of the fifth degree. He filed a motion to suppress, and argued at a suppression hearing that the Montville officer lacked authority to patrol and conduct traffic stops or consensual encounters in Wadsworth, and the officer was not wearing a standard Medina County Sheriff's Department uniform in accordance with R.C. 311.28. The trial court denied the motion to suppress, and Mr. Gonzales pled no contest. The court found him guilty and sentenced him to 180 days of residential community control in jail, with a review after 90 days.

{¶5} Mr. Gonzales now appeals from his conviction and raises one assignment of error for this Court's review.

II.

**ASSIGNMENT OF ERROR**

THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY DENYING DEFENDANT'S MOTION TO SUPPRESS THE EVIDENCE BASED ON THE VIOLATION OF DEFENDANT-APPELLANT'S RIGHTS UNDER ARTICLE 1, SECTION 14 OF THE OHIO CONSTITUTION, WHERE CONTRARY TO R.C. 2935.03 AND R.C. 4513.39 (1) THE TOWNSHIP POLICE OFFICER WAS OUTSIDE HIS TOWNSHIP'S TERRITORIAL JURISDICTION WHEN HE APPROACHED THE PARKED MOTOR VEHICLE IN WHICH DEFENDANT-APPELLANT WAS A PASSENGER; (2) THE TOWNSHIP OFFICER DID NOT OBSERVE AND WAS NOT AWARE OF ANY TRAFFIC VIOLATIONS, OR OTHER SUSPECTED ILLEGAL ACTIVITY, BY THE VEHICLE'S OWNER OR OCCUPANTS TAKING PLACE WITHIN HIS OWN TOWNSHIP'S TERRITORIAL JURISDICTION; (3) THE MOTOR VEHICLE, IN WHICH DEFENDANT-APPELLANT WAS A PASSENGER, WAS NOT LOCATED IN A JURISDICTION ADJACENT TO OR BORDERING THE

TOWNSHIP OFFICER'S OWN TOWNSHIP; AND (4) THE TOWNSHIP OFFICER'S COMMISSION AS A RESERVE SHERIFF'S DEPUTY DID NOT AUTHORIZE HIM TO INVESTIGATE SUSPECTED ILLEGAL DRUG OFFENSES OUTSIDE HIS OWN TOWNSHIP AND DETAIN SUSPECTS.

{¶6} In his sole assignment of error, Mr. Gonzales argues that the trial court erred in denying his motion to suppress for a variety of reasons, all of which challenge the police officer's authority and jurisdiction in this case. We disagree.

{¶7} A motion to suppress presents a mixed question of law and fact:

When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses. Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard.

*State v. Oberholtz*, 9th Dist. Summit No. 27972, 2016-Ohio-8506, ¶ 5, quoting *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8.

{¶8} In its order denying Mr. Gonzales' motion to suppress, the trial court made the following findings of fact. The court found that Officer Ryan Gibbons of the Montville Township Police Department also held a commission as a reserve deputy with the Medina County Sheriff's Department to work on various task forces. On May 16, 2017, Officer Gibbons was working drug interdiction as a member of the Criminal Patrol Task Force while wearing his Montville police uniform and driving a Montville police cruiser. He began following a vehicle driving westbound on I-76 and ran its license plate number. The vehicle was registered in Trumbull County, which the officer noted was quite some distance from Medina. He followed the vehicle as it exited the highway and eventually parked in the Rohrer Corporation parking lot on Seville Road in Medina. Officer Gibbons never activated his overhead lights, and parked his cruiser away from the other vehicle to allow it freedom to leave.

{¶9} The trial court found that Officer Gibbons then approached the vehicle and spoke to D.S., B.G., and Mr. Gonzales. D.S. was already outside of the vehicle, but B.G. remained in the front passenger seat and Mr. Gonzales remained in the rear seat. The officer spoke to B.G. and Mr. Gonzales about their tattoos and immediately noticed fresh needle punctures on Mr. Gonzales' arm and B.G.'s neck. One of the punctures on B.G.'s neck was oozing blood. Based on the officer's training and experience, he believed the location and nature of the needle punctures were indicative of illegal narcotics use.

{¶10} The court found that Officer Gibbons asked the passengers for their identifications to conduct a wants and warrants check, and Deputy King arrived two or three minutes later with his K-9 Unit. D.S. consented to a search of his vehicle. While awaiting the results of the wants and warrants check, Deputy King walked his K-9 Unit around the vehicle, and the dog alerted to the presence of illegal narcotics inside. B.G. had an active felony warrant for possession of heroin in Summit County, which was confirmed through dispatch. B.G. was placed in handcuffs and she admitted she had a drug needle down her pants.

{¶11} The court found that during the search of the vehicle, under the front seat, officers discovered a needle containing a clear substance, which later tested positive for heroin. In the back seat, where Mr. Gonzales' feet had been, officers discovered an eyeglasses case containing several needles, cotton, spoons, and other drug paraphernalia. Inside of the trunk, they discovered a methamphetamine pipe, which later tested positive for methamphetamine. Mr. Gonzales admitted that he had used methamphetamine a week ago and was just released from the hospital following a heroin overdose.

{¶12} Upon review of the record, we accept the trial court's findings of fact as supported by competent, credible evidence. Mr. Gonzales briefly takes issue with the trial

court's findings by noting that the court omitted the fact that Officer Gibbons' commission expressly states: "[t]his 'Reserve Deputy' Commission is only valid for the purpose of a tactical response, training, or related emergency response as defined in the M.O.U. for Regional SWAT Team between the Sheriff of Medina County Ohio and Medina County Ohio Townships and Municipalities." Although Mr. Gonzales did, in fact, attach that document to his motion to suppress and it was therefore in the record, this Court has stated that a trial court does not commit reversible error on every occasion in which certain facts present in the record are omitted from its findings of fact in an order denying a motion to suppress. *See State v. Curan*, 9th Dist. Medina No. 16CA0021-M, 2016-Ohio-8502, ¶ 11; *State v. Trivett*, 9th Dist. Medina No. 15CA0041-M, 2016-Ohio-8204, ¶ 8. Accepting the trial court's findings of fact as true, we must now independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard. *Oberholtz*, 2016-Ohio-8506, at ¶ 5; *Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, at ¶ 8.

{¶13} Mr. Gonzales relies on the Supreme Court of Ohio's decision in *State v. Brown* to argue that Officer Gibbons did not observe any traffic violations and further lacked the statutory authority to conduct a traffic stop. *See State v. Brown*, 143 Ohio St.3d 444, 2015-Ohio-2438, ¶ 26 (holding that "[a] traffic stop for a minor misdemeanor made outside a police officer's statutory jurisdiction or authority violates the guarantee against unreasonable searches and seizures established by Article I, Section 14 of the Ohio Constitution").

{¶14} The Fourth Amendment to the United States Constitution, as applied to the states through the Fourteenth Amendment, prohibits unreasonable searches and seizures. *Accord* Article I, Section 14, of the Ohio Constitution. Nevertheless, "not all personal intercourse between policemen and citizens involves 'seizures' of persons." *Terry v. Ohio*, 392 U.S. 1, 19

(1968) fn. 16. Police-citizen contact spans a continuum from consensual encounters to investigatory stops to seizures tantamount to an arrest. *State v. Mason*, 9th Dist. Summit No. 27715, 2016-Ohio-7081, ¶ 20. Traffic stops of automobiles are seizures for purposes of the Fourth Amendment. *State v. Phillips*, 9th Dist. Medina No. 16CA0018-M, 2017-Ohio-1312, ¶ 6. Consensual encounters, however, occur "'where the police merely approach a person in a public place, engage the person in conversation, request information, and the person is free not to answer and walk away.'" *Akron v. Harvey*, 9th Dist. Summit No. 20016, 2000 WL 1859838, *1 (Dec. 20, 2000), quoting *State v. Taylor*, 106 Ohio App.3d 741, 747 (2d Dist.1995). *See also Florida v. Bostick*, 501 U.S. 429, 434-435 (1991). The Fourth Amendment is not implicated in consensual encounters unless the officer has restrained the person's liberty, either by physical force or by a show of authority, so that a reasonable person would not feel free to decline the officer's requests or otherwise terminate the encounter. *Id.*

{¶15} Based on the totality of the circumstances surrounding this incident, we conclude that Officer Gibbons engaged the vehicle's occupants in a consensual encounter, not a traffic stop. Officer Gibbons neither activated his overhead lights, nor used any other show of authority to cause the vehicle to stop. Instead, the officer simply followed the vehicle, and D.S. eventually parked it freely and of his own volition. Officer Gibbons neither used his police cruiser to physically block the vehicle from leaving its parking spot, nor used any physical force or show of authority to prevent its occupants from leaving the area. *Compare State v. Helmick*, 9th Dist. Summit No. 27179, 2014-Ohio-4187, ¶ 11, quoting *State v. Maitland*, 9th Dist. Summit No. 25823, 2011-Ohio-6244, ¶ 6 ("'[I]f an officer positions his vehicle so that a person cannot exit a parking lot without asking the officer to move, the officer has exhibited a show of authority constituting a seizure.'"). Instead, Officer Gibbons parked his cruiser some distance away from

the vehicle, approached the individuals on foot, and spoke to them in a way such that a reasonable person would have felt free to ignore him or terminate the encounter. *See Harvey* at *1. *See also Helmick* at ¶ 11, quoting *State v. McCray*, 9th Dist. Lorain No. CA99CA007310, 2000 WL 254909, *1 (Mar. 8, 2000), quoting *State v. Johnston*, 85 Ohio App.3d 475, 478 (4th Dist.1993) ("'The mere approach and questioning of persons seated within parked vehicles does not constitute a seizure so as to require reasonable suspicion supported by specific articulable facts.'"). Because this was a consensual encounter, Mr. Gonzales' reliance on *Brown* is misplaced, as that authority is inapposite to the extent that it specifically concerns police authority to conduct traffic stops.

{¶16} "[W]hen a consensual encounter later results in an investigatory detention, that detention must be supported by reasonable suspicion." *State v. Martin*, 9th Dist. Summit No. 28722, 2018-Ohio-1705, ¶ 12. Here, Officer Gibbons approached the occupants in a consensual encounter and immediately observed fresh needle punctures on Mr. Gonzales' arm and B.G.'s neck, including one that was still oozing blood. Based on the officer's training and experience, he testified that such marks were indicative of illegal narcotics use. Based on the totality of the circumstances in this case, we conclude that the officer's immediate observations provided him with a reasonable, articulable suspicion to elevate the initial, consensual counter into an investigatory detention. *See id.*

{¶17} Mr. Gonzales also challenges Officer Gibbons' authority to act as a reserve sheriff's deputy, relying on specific language in the officer's commission, and arguing that no evidence was introduced to show the officer was engaged in a "tactical response, training, or related emergency response as defined in the M.O.U. for Regional SWAT Team" in this matter. While the officer's commission is contained in the record, the M.O.U. defining the terms

"tactical response," "training," and "related emergency response" is not. *See* App.R. 9 ("It is the appellant's responsibility to ensure that the record on appeal contains all matters necessary to allow this Court to resolve the issues on appeal."). Officer Gibbons is commissioned as a reserve sheriff's deputy, and he testified that he was working drug interdiction in this capacity as a member of the Criminal Patrol Task Force. Because there is no evidence in the record that his performance of such duties in that capacity did *not* fall within the ambit of the M.O.U. and its terms, Mr. Gonzales' argument must fail.

{¶18} Mr. Gonzales then challenges Officer Gibbons' authority to act as a Medina County reserve deputy by arguing that the officer was dressed in his Montville police uniform and driving a Montville police cruiser, contrary to the requirements of R.C. 311.28:

> The county sheriffs' standard car-marking and uniform commission shall prescribe a uniform of standard design and color for the use of all county sheriffs and shall prescribe a standard color and design of car-marking for all motor vehicles used by county sheriffs.

> On and after January 1, 1961, the standard uniform shall be worn by the county sheriffs and their deputies and the standard car-markings shall be used on all cars operated by the county sheriffs and their deputies while in the performance of their duties.

Officer Gibbons testified that he has never received any specific sheriff's deputy uniform, but instead normally wears his Montville uniform. He also testified that he knows of several other sheriff's deputies who patrol without a specific sheriff's patrol car.

{¶19} This Court previously rejected a similar argument involving the same officer in *State v. Lentine*, 9th Dist. Medina No. 16CA0032-M, 2017-Ohio-7356, ¶ 5-8. In *Lentine*, we stated: "The fact that a deputy is a volunteer or serves in a reserve role does not diminish [his] classification as a deputy sheriff." *Id.* at ¶ 7, citing *State v. Glenn*, 28 Ohio St.3d 451, 453-454 (1986) (concluding that a volunteer reserve deputy sheriff was a "peace officer" under R.C.

2929.04). We then determined that the appellant had not provided any authority to suggest that a sheriff's deputy cannot perform his duties unless he is wearing a uniform and using equipment provided by the sheriff's department. *Id.* at ¶ 8. While Mr. Gonzales cites to R.C. 311.28 and its use of the word "shall," nothing in that statute delineates any sanctions or consequences for a deputy's failure to comply with its terms. Here, as in *Lentine*, Mr. Gonzales directs us to no other authority supporting the proposition that a reserve deputy either cannot perform his duties or is somehow stripped of his authority to perform such duties if he is dressed in his typical, day-to-day police uniform as opposed to a standard issue sheriff's deputy uniform. Although Officer Gibbons was dressed in a Montville Police Department uniform and not a Medina County Sheriff's Department uniform, his attire made his position as a law enforcement officer abundantly clear to Mr. Gonzales and his companions.

{¶20} We therefore conclude that the trial court did not err in denying Mr. Gonzales' motion to suppress.

{¶21} Accordingly, Mr. Gonzales' sole assignment of error is overruled.

III.

{¶22} Mr. Gonzales' sole assignment of error is overruled. The judgment of the Medina County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

THOMAS A. TEODOSIO
FOR THE COURT

SCHAFER, J.
CALLAHAN, J.
CONCUR.

APPEARANCES:

JOSEPH F. SALZGEBER, Attorney at Law, for Appellant.

S. FORREST THOMPSON, Prosecuting Attorney, and VINCENT V. VIGLUICCI, Assistant Prosecuting Attorney, for Appellee.