[Cite as *State v. Marland*, 2017-Ohio-4353.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## LOGAN COUNTY

STATE OF OHIO,

      PLAINTIFF-APPELLEE,               CASE NO.  8-16-15

      v.

EDWARD K. MARLAND,               O P I N I O N

      DEFENDANT-APPELLANT.

Appeal from Logan County Common Pleas Court
Trial Court No. CR15-11-0298

Judgment Affirmed in Part, Reversed in Part and Cause Remanded

Date of Decision:   June 19, 2017

APPEARANCES:

    *Kort Gatterdam* for Appellant

    *Eric C. Stewart* for Appellee

Case No. 8-16-15

**PRESTON, P.J.**

{¶1} Defendant-appellant, Edward Keith Marland ("Marland"), appeals the October 17, 2016 judgment entry of sentence of the Logan County Court of Common Pleas. For the reasons that follow, we affirm in part and reverse in part. We remand the case to the trial court to correct a problem with its merger procedure.

{¶2} This case stems from an incident in the early morning hours of October 18, 2015. Shortly after midnight on that date, motorist Joshua VanBuskirk ("VanBuskirk") came to the scene of a car crash on State Route 292 between East Liberty, Ohio and Ridgeway, Ohio. That crash involved Marland and a motorcyclist named James Long Jr. ("Long"). Soon after arriving at the scene of the accident, VanBuskirk called for emergency responders, who soon arrived. Police repeatedly sought Marland's consent to draw his blood to determine its alcohol content, but he refused. Police also conducted a number of field sobriety tests, the results of which led them to believe that Marland operated his vehicle while under the influence of alcohol. Police then arrested Marland and eventually took him to a nearby hospital, where he consented to a blood draw.

{¶3} On November 12, 2015, the Logan County Grand Jury indicted Marland on three counts. (Doc. No. 2). On November 18, 2015, Marland appeared for arraignment and pled not guilty to the counts in the indictment. (Doc. No. 5). The State filed an amended indictment on December 8, 2015. (Doc. No. 21). The

-2-

amended indictment charged Marland with: Count One of operating a vehicle under the influence of alcohol or drugs ("OVI") in violation of R.C. 4511.19(A)(1)(a), a misdemeanor of the first degree; Count Two of OVI in violation of R.C. 4511.19(A)(1)(b), a misdemeanor of the first degree; Count Three of OVI in violation of R.C. 4511.19(A)(1)(j)(viii)(I), a misdemeanor of the first degree; and Count Four of aggravated vehicular homicide in violation of R.C. 2903.06(A)(1)(a), a felony of the first degree. (Doc. No. 21). On December 15, 2015, Marland appeared for arraignment and pled not guilty to the counts in the amended indictment. (Doc. No. 32).

{¶4} Marland filed several motions to suppress evidence. (Doc. Nos. 10, 11, 12, 20, 50, 64). The motion to suppress evidence relevant here is the one filed on August 3, 2016. (Doc. No. 64). As part of that motion to suppress evidence, Marland sought the suppression of the blood drawn from him because the blood was not timely drawn and because he did not consent to the blood draw, thus rendering the blood draw an illegal search under both constitutional and statutory provisions. (Doc. No. 64).

{¶5} On August 12, 2016, the trial court denied Marland's motion to suppress evidence, finding that Marland's blood had been drawn within three hours of the accident, and the trial court further found that the blood draw was not an

unconstitutional search because exigent circumstances existed and because Marland consented to the blood draw. (Doc. No. 70).

{¶6} On September 2, 2016, Marland appeared at a change-of-plea hearing and pled no contest to each of the counts in the amended indictment. (Doc. No. 70). In an entry journalized September 15, 2016, the trial court found Marland guilty of each of the charges to which he pled no contest. (*Id.*).

{¶7} On October 3, 2016, the trial court held a sentencing hearing and sentenced Marland to six months in prison as to Count One, six months in prison as to Count Two, six months in prison as to Count Three, and six years in prison as to Count Four. (Doc. No. 82). The trial court specifically found that Counts One, Two, and Three merged.[1] (*Id.*). The trial court ordered that the sentences for all counts be run concurrently for a total of six years of incarceration. (*Id.*). The trial court filed its judgment entry of sentence on October 17, 2016. (*Id.*).

{¶8} Marland filed his notice of appeal on November 1, 2016. (Doc. No. 96). He brings two assignments of error for our review.

## Assignment of Error No. I

**The Trial Court Erred In Denying Appellant's Motion To Suppress Evidence Contrary To Appellant's Statutory Rights And Rights Under the Fourth Amendment To The U.S. Constitution And Corresponding Rights Under the Ohio Constitution.**

---

[1] In most cases this court reviews, merger problems are avoided because the defendant pleads to only one count of OVI, and the other OVI charges are dismissed.

{¶9} In his first assignment of error, Marland argues that the trial court erred in denying his motion to suppress evidence because his statutory rights and his rights under the constitutions of Ohio and of the United States were violated. Specifically, Marland argues that R.C. 4511.19(D)(1)(b) states that evidence of blood-alcohol concentration is admissible only if the blood used to discern that concentration is drawn within three hours of the alleged violation. In short, Marland argues that the testimony of VanBuskirk never established when the accident occurred and that portions of VanBuskirk's testimony indicate that there was greater gap between the accident and VanBuskirk's arrival than the trial court assumed. Marland also seems to argue that the timeline assumed by the trial court is less credible in light of the fact that getting from the scene of the accident to the hospital required thirteen minutes of travel.

{¶10} Marland further argues that the warrantless withdraw of his blood violated his constitutional and statutory rights. Specifically, Marland argues that the withdraw of a blood sample so that its alcohol content may be determined is a search and seizure under the Fourth Amendment to the United States Constitution. Though he does not specifically assert as much, Marland seems to argue that a warrant was necessary for the blood draw and that exceptions to the warrant requirement are not met in this case, thus requiring the suppression of the evidence gleaned from the blood draw. Marland also argues that R.C. 4511.19(D)(1)(b)

allows the trial court to admit evidence of his blood alcohol concentration only, as relevant here, if he consented. Marland argues that the trial court erred in crediting the testimony of two law enforcement officers to find that he consented to the blood draw. Marland further argues that the mere attempt to obtain his consent for the blood draw at the hospital violated R.C. 4511.192(A).

{¶11} We begin by noting that, though Marland argues that the trial court's rulings violate the constitutions of Ohio and of the United States, the Ohio Constitution's search-and-seizure provisions have been interpreted as providing the same protection as is provided by the Fourth Amendment to the United States Constitution. *State v. Hoffman*, 141 Ohio St.3d 428, 2014-Ohio-4795, ¶ 11, citing *State v. Robinette*, 80 Ohio St.3d 234, 238-239 (1997).

{¶12} A review of the denial of a motion to suppress involves mixed questions of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8. At a suppression hearing, the trial court assumes the role of trier of fact and, as such, is in the best position to evaluate the evidence and the credibility of witnesses. *Id. See also State v. Carter*, 72 Ohio St.3d 545, 552 (1995). When reviewing a ruling on a motion to suppress, "an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence." *Burnside* at ¶ 8, citing *State v. Fanning*, 1 Ohio St.3d 19 (1982). With respect to the trial court's conclusions of law, however, our standard of review is de novo, and we must

independently determine whether the facts satisfy the applicable legal standard. *Id.*, citing *State v. McNamara*, 124 Ohio App.3d 706 (4th Dist.1997).

{¶13} R.C. 4511.19(D) states, in relevant part, that a trial court may admit evidence of the "concentration of alcohol * * * at the time of the alleged violation as shown by chemical analysis of the substance withdrawn within three hours of the time of the alleged violation." R.C. 4511.19(D)(1)(b).

{¶14} The suppression hearing relevant to this assignment of error occurred over the course of two days. At the proceeding on July 28, 2016, the State first called Ashley Brown ("Brown"), a phlebotomist who drew Marland's blood on October 18, 2015 at Mary Rutan Hospital in Bellefontaine, Ohio. (July 28, 2016 Tr. at 10). On direct examination, Brown testified that Marland did nothing to indicate that he did not want his blood drawn when she prepared to draw it. (*Id.* at 13). Brown further testified that the blood draw took place at 2:50 a.m. (*Id.* at 16). On cross examination, Brown admitted that Marland did not verbally consent in her presence to having his blood drawn. (*Id.*).

{¶15} The State next called Trooper Tyler Easter ("Easter") of the Ohio State Highway Patrol. (*Id.* at 23). Easter testified that he was dispatched to the scene of the crash in question at 12:19 a.m. (*Id.* at 23-24). Easter arrived at the scene of the crash and examined Marland, seeing that he had bloodshot and glassy eyes and a flushed face, in addition to the fact that the odor of alcohol emanated from him. (*Id.*

at 26). Easter identified State's Exhibit 7 as the video recording of the scene as visible from the police cruiser. (*Id.* at 28). Easter testified that Marland was released from the custody of emergency medical personnel by 12:53 a.m. and that, at that point, Easter walked Marland to the front of his police cruiser and began to search Marland for weapons. (*Id.* at 29). Easter then testified that he questioned Marland extensively about the incident. (*Id.* at 31-32). He identified State's Exhibit 3 as containing the questions Easter asked Marland, as well as Marland's answers to those questions. (*Id.* at 30); (State's Ex. 3). A number of field sobriety tests followed. (July 28, 2016 Tr. at 34-43). Based on the results of those tests, Easter arrested Marland. (*Id.* at 43). Easter testified that, subsequent to Marland's arrest, Easter read Marland the BMV 2255 form at approximately 1:50 a.m. (*Id.* at 43-44). Easter testified that he then drove Marland to the hospital, arriving there at approximately 2:23 a.m. (*Id.* at 45). Easter averred that Marland consented to the blood draw only after Marland spoke with his fiancé. (*Id.* at 45-46). He testified that the blood draw took place at 2:50 a.m. (*Id.* at 51).

{¶16} On cross examination, Easter testified that he knew the accident took place at approximately 12:19 a.m., though he also conceded that he did not witness the accident and did not know the exact time it took place. (*Id.* at 57-58). According to Easter, he spoke with Marland several times about consenting to a blood draw and informed Marland that, if he did not consent, a warrant for the blood draw would

be obtained. (*Id.* at 59). Easter further testified that, despite Marland's eventual consent to the blood draw, Marland's consent was never written down or otherwise recorded. (*Id.* at 62).

{¶17} The State next called Sargent Phillip Clemons ("Clemons") of the Ohio State Highway Patrol. (*Id.* at 62-63). Clemons testified that he too was dispatched to the scene of the crash in question on State Route 292 in Logan County (*Id.* at 63). Clemons further testified that he met Marland and Easter at the hospital and informed Marland that, if Marland did not consent to a blood draw, Clemons would obtain a warrant to draw Marland's blood. (*Id.* at 64). Clemons asserted that, after Marland spoke with his fiancé at the hospital, he voluntarily consented to the blood draw. (*Id.* at 64-65). Clemons conceded that the process of getting a search warrant can take anywhere from two to six hours and that he would not have had time to obtain a search warrant for a blood draw prior to the expiration of the three-hour time limit. (*Id.* at 65-67).

{¶18} The trial court held an additional hearing on the motion to suppress evidence on August 8, 2016, the specific item at issue being the timeliness of the blood draw. (Aug. 8, 2016 Tr. at 4).[2] At that hearing, the State called VanBuskirk.

---

[2] There is a discrepancy in the transcript. The front of the transcript for the suppression hearing indicates that the proceeding took place August 10, 2016. (Aug. 8, 2016 Tr. at 1). The first page of the transcript that includes testimony has the date of the proceeding as August 8, 2016. (*Id.* at 4). This court does not believe the difference is material, and we have chosen to cite to the transcript as though the second date is the correct one.

(*Id.*). VanBuskirk testified that, when he arrived at the crash scene on the night in question, the traffic was very light, and he did not recall seeing any cars in front of him. (*Id.* at 6). He then testified that he saw one car far ahead of him, the presence of which he detected only because of that vehicle's tail lights. (*Id.* at 7). Van Buskirk testified that the vehicle in front of him was heading north on State Route 292. (*Id.*). He testified that, when he came to the crash site, he saw a great deal of debris, including a face shield of the kind that would normally be on a helmet, as well as a car in the middle of the road. (*Id.*). VanBuskirk testified that the lights of the vehicle were on and that he was "pretty sure" the vehicle was still running. (*Id.* at 9). He then testified that he called 911 "within [a] minute" of arriving on the scene of the accident, though he did not see the crash himself. (*Id.* at 10).

{¶19} On cross examination, VanBuskirk admitted that he was not certain that the tail lights he saw belonged to the car that was in the accident; but, he testified that, if the tail lights belonged to another vehicle, that vehicle would have had to drive through the scene of the accident without stopping to check on anyone. (*Id.* at 11). VanBuskirk testified that there was "plenty of evidence that [the crash] just happened" before VanBuskirk arrived at the scene. (*Id.* at 12).

{¶20} The State then called Sergeant Ryan Furlong ("Furlong") of the Logan County Sheriff's Office. (*Id.* at 16). Furlong testified that the sheriff's office

received a 911 call from VanBuskirk on October 18, 2015 at 12:17 a.m. and that emergency responders were then dispatched to the scene. (*Id.* at 18-19).

{¶21} Based on the record we reviewed above, we conclude that the trial court did not err in finding that Marland's blood was drawn within three hours of the crash. Ohio courts have found evidence of the kind we have reviewed above to be competent and credible evidence of the time of a car crash. *State v. Hollis*, 5th Dist. Richland No. 12CA34, 2013-Ohio-2586, ¶ 34-35. In *Hollis*, the court found evidence of the time of a crash and the timeliness of a blood draw to be competent and credible where a police officer testified as to the time of the dispatch and where circumstantial evidence suggested that the crash had occurred shortly before the dispatch. *Id.* at ¶ 35. The circumstantial evidence on which the Fifth District Court of Appeals in *Hollis* focused included the fact that the defendant was still on the scene when police arrived and admitted that he was the driver. *Id.*

{¶22} Similar facts are now before us. Though it is true that VanBuskirk's testimony did not establish the exact time at which the accident occurred, he testified that there was ample evidence that the accident had "just happened" when he arrived at the scene shortly after midnight. (Aug. 8, 2016 Tr. at 12). Marland's lights were still on, and VanBuskirk testified that he was "pretty sure" that Marland's car was still running when he arrived. (*Id.* at 9). VanBuskirk also testified that debris from the crash was strewn about the roadway. (Aug. 8, 2016 Tr. at 7). Easter specifically

asserted in his testimony that the accident took place at approximately 12:19 a.m. (July 28, 2016 Tr. at 57-58). Marland was still on the scene when first responders arrived, and there is no dispute that Marland was the one driving his vehicle. We conclude that the trial court relied on competent, credible evidence in finding that Marland's blood was drawn within three hours of the accident.

**{¶23}** Marland next argues that the trial court erred in finding that he consented to the blood draw. Specifically, he argues that the Fourth Amendment to the United States Constitution and the analogous provision of the Ohio Constitution require the State to procure a search warrant in order to conduct a blood draw absent certain exceptions that Marland argues are unmet here. Marland further asserts that R.C. 4511.19(D)(1)(b) permits the State to use evidence from the blood draw only, as relevant here, if Marland consented to the blood draw.

**{¶24}** The Fourth Amendment to the United States Constitution prohibits unreasonable searches, and applicable precedent has held that the taking of a blood sample by the State is a search. *Schmermber v. California*, 384 U.S. 757, 767, 86 S.Ct. 1826 (1966). The search-incident-to-arrest exception to the warrant requirement does not permit the warrantless taking of a blood sample. *Birchfield v. North Dakota*, ___ U.S. ___, 136 S.Ct. 2160, 2185 (2016). However, neither a warrant nor probable cause is needed for a search where the person subject to the search gives consent. *State v. Posey*, 40 Ohio St.3d 420, 427 (1988), citing

*Schneckloth v. Bustamonte,* 412 U.S. 218, 219, 93 S.Ct. 2041 (1973).  In order to be valid, consent must be voluntary.  *State v. Roberts*, 110 Ohio St.3d 71, 82, 2006-Ohio-3665, ¶ 98, citing *Schneckloth* at 249.  Whether consent to a search was voluntary or was instead the product of coercion or duress is a question of fact to be determined based on the totality of the circumstances.  *Id.*, citing *Schneckloth* at 227.

{¶25} We conclude that the trial court did not err in finding that Marland consented to the blood draw.  This situation was addressed previously.  *State v. King*, 1st Dist. Hamilton No. C-010778, 2003-Ohio-1541.  In *King*, the defendant was involved in a car accident and taken to a hospital, at which point police attempted to elicit his consent to a blood draw.  *Id.* at ¶ 2-6.  King did not consent initially.  *Id.* at ¶ 6.  However, a police officer and King's nurse testified that King eventually consented to the blood draw.  *Id.* After the trial court denied King's motion to suppress evidence obtained from the blood draw, the appellate court found that the testimony of the nurse and the police officer as to consent was competent and credible.  *Id.* at ¶ 17.

{¶26} Similar facts exist here.  After the accident, Marland did not initially consent to having his blood drawn.  However, after his arrival at the hospital and a conversation with his fiancé, he indeed did consent, according to the testimony of two witnesses who were in the room at the time.  Therefore, we conclude that the

trial court relied on competent and credible testimony in finding that Marland consented. *Id.*

{¶27} We further hold that Marland's consent was in no sense involuntary or coerced simply because police told Marland that they would obtain a warrant if he withheld his consent. *State v. Dunwoody*, 5th Dist. Licking No. 2004CA49, 2005-Ohio-219, ¶ 19 (concluding that consent is not rendered involuntary simply because it is given after police indicate an intention to obtain a warrant if consent is withheld).[3]

{¶28} Marland further asserts that the mere attempt by police to obtain his consent to a blood draw violated his rights under R.C. 4511.192(A). We disagree. That statute pertains to administrative license suspensions and the length of time within which one must submit, if at all, to sobriety tests, as well as the effect of refusing to submit to such tests. R.C. 4511.192. *See also State v. Brown*, 3d Dist. Marion No. 9-16-37, 2017-Ohio-678, ¶ 16 (discussing R.C. 4511.192(A) as it relates to administrative license suspensions immediately imposed on those who drive while under the influence of a prohibited concentration of alcohol). This is plainly different from a blanket ban on even attempting to obtain consent as constitutional provisions or other statutes use the term. We find Marland's

---

[3] This court is cognizant of the fact that the State argues that exigent circumstances existed in this case. Marland disputes this claim. Even though it appears that the trial court erred, we need not address the issue of exigent circumstances because we conclude that the trial court relied on competent and credible evidence in finding that Marland consented.

argument to be meritless, and we conclude that the trial court did not err in finding that Marland consented to the blood draw.

{¶29} For the foregoing reasons, Marland's first assignment of error is overruled.

### Assignment of Error No. II

**The Trial Court Erred In Limiting The Scope Of The Suppression Hearing Contrary To Appellant's Rights To Due Process And The Right to Challenge The State's Evidence Against Him.**

{¶30} In his second assignment of error, Marland argues that the trial court erred by limiting the scope of the suppression hearing and thus violated his right to due process of law and his right to challenge the State's evidence against him. Specifically, Marland argues that the trial court improperly stopped his trial counsel from asking questions pertaining to the blood draw.

{¶31} Decisions about whether to admit evidence rest within the sound discretion of the trial court, and those decisions will not be disturbed on appeal absent an abuse of discretion. *State v. Kelley*, 3d Dist. Putnam No. 12-2000-15, 2001WL 211408 (March 5, 2001), citing *Wyant v. Marble*, 135 Ohio App.3d 559, 563 (1st Dist.1999). An "abuse of discretion" connotes more than an error in judgment; it implies that a court's attitude is unreasonable, arbitrary, or unconscionable. *State v. Adams*, 62 Ohio St.2d 151, 157 (1980). A trial court may impose reasonable limits on cross examination based on a variety of concerns,

including harassment, prejudice, confusion of the issues, a witness's safety, repetitive testimony, and "marginally relevant interrogation." *State v. Treesh*, 90 Ohio St.3d 460, 480-481 (2001).

{¶32} At the pertinent hearing on July 28, 2016, Marland's trial counsel conducted his cross examination, which focused on whether Marland physically resisted the blood draw, in addition to whether he verbally consented. (July 18, 2016 Tr. at 16-18). Following a brief re-direct examination by the State, the trial court questioned Brown only as to the time of the blood draw and then asked both trial counsels whether they had any questions in light of the trial court's questions. (*Id.* at 19-20). Marland's trial counsel answered affirmatively, and he proceeded to question Brown about whether she kept notes pertaining to how she handled Marland's case. (*Id.* at 20). Marland's trial counsel also asked about what additives were put in the tubes that held Marland's blood. (*Id.* at 21). At that point, the trial court said that Marland's trial counsel was getting "far afield" from the trial court's questions. (*Id.*). The trial court further explained that Marland's trial counsel had already ended his cross examination of the witness and that the trial court's invitation to ask further questions based on the trial court's questions "[did] not reopen the witness." (*Id.* at 22).

{¶33} Based on the facts and law above, we conclude that the trial court did not act arbitrarily, unreasonably, or unconscionably in limiting Marland's trial

counsel's questioning of Brown. *Treesh* at 480-481. The Supreme Court of Ohio permits trial courts to limit the admission of evidence on cross examination based on concerns about "marginally relevant testimony." *Id.* The trial court in this case obviously thought that questions about what additives were in the tube that held Marland's blood were "marginally relevant" to the time at which the blood sample was taken. (July 18, 2016 Tr. at 21). We agree. Because Marland's trial counsel's questions were at best marginally relevant to the trial court's questions, we conclude that the trial court did not err in limiting the scope of cross examination.

{¶34} Based on the reasoning above, Marland's second assignment of error is overruled.

{¶35} Despite our overruling Marland's assignments of error, we note an error with respect to merger. Under R.C. 2941.25, when the same conduct may be construed to constitute two or more allied offenses of similar import, those offenses merge for purposes of sentencing, and the defendant may be convicted of only one of them. R.C. 2941.25. The proper procedure in such cases is that the State must elect which of the allied offenses to pursue for sentencing purposes. *State v. Whitfield*, 124 Ohio St.3d 319, 2010-Ohio-2, ¶ 20. This merger procedure exists to ensure that courts do not impose "improper or cumulative punishments for allied offenses," and it is not discretionary. *Id.* at ¶ 18 (noting that the statute "requires" merger at sentencing).

**{¶36}** In this case, the trial court found that the OVI charges merge, but it then sentenced Marland on each of three allied offenses. (Doc. No. 82). This was improper. *See Whitfield* at ¶ 20.

**{¶37}** Having overruled both assignments of error herein, we affirm the judgment as to the aggravated vehicular homicide charge but reverse the convictions and sentences of the three OVI charges and remand this matter to the trial court to correct its improper merger procedure.

*Judgment Affirmed in Part,*
*Reversed in Part and*
*Cause Remanded*

**ZIMMERMAN and SHAW, J.J., concur.**

**/jlr**