[Cite as *State v. Davis*, 2020-Ohio-619.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
### SENECA COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,                CASE NO. 13-19-17

    v.

JUSTIN M. DAVIS,                     O P I N I O N

    DEFENDANT-APPELLANT.

Appeal from Seneca County Common Pleas Court
Trial Court No. 18 CR 0255

Judgment Affirmed

Date of Decision: February 24, 2020

APPEARANCES:

    *John M. Kahler, II* for Appellant

    *Angela M. Boes* for Appellee

**PRESTON, J.**

{¶1} Defendant-appellant, Justin M. Davis ("Davis"), appeals the May 15, 2019 judgment of sentence of the Seneca County Court of Common Pleas. For the reasons that follow, we affirm.

{¶2} On November 21, 2018, the Seneca County Grand Jury indicted Davis on a single count of possession of heroin in violation of R.C. 2925.11(A), (C)(6)(a), a fifth-degree felony. (Doc. No. 1). On December 12, 2018, Davis appeared for arraignment and entered a plea of not guilty. (Doc. No. 9).

{¶3} On December 21, 2018, Davis filed a motion to suppress. (Doc. No. 10). On February 4, 2019, the State filed its opposition to Davis's motion to suppress. (Doc. No. 14). The trial court held a hearing on the motion to suppress on February 5, 2019 and February 12, 2019. (Doc. No. 18). On March 13, 2019, the trial court denied Davis's motion to suppress. (*Id.*).

{¶4} On April 8, 2019, Davis withdrew his plea of not guilty and entered a no contest plea to the count in the indictment. (Doc. No. 22). The trial court found Davis guilty and ordered a pre-sentence investigation. (*Id.*). On May 15, 2019, the trial court sentenced Davis to three years of community control. (Doc. No. 24).

{¶5} Davis filed his notice of appeal on June 6, 2019. (Doc. No. 25). He raises two assignments of error, which we address together.

## Assignment of Error No. I

**The trial court erred when it denied Appellant's motion to suppress evidence on the grounds that the Appellant consented to the search or that the search was warranted by exigent circumstances.**

## Assignment of Error No. II

**The trial court erred in denying Appellant's motion to suppress evidence as the officer had no jurisdiction to detain Appellant for a traffic violation committed outside of the officer's jurisdictional territory.**

{¶6} In his first assignment of error, Davis argues that the trial court erred by denying his motion to suppress because he did not consent to a search of his person and the search was not warranted by exigent circumstances. In his second assignment of error, Davis argues that the trial court erred by denying his motion to suppress because Sergeant Joe Feld ("Sergeant Feld") acted outside of his authority by detaining Davis outside of Sergeant Feld's jurisdiction.

{¶7} "Appellate review of a motion to suppress presents a mixed question of law and fact." *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8. At a suppression hearing, the trial court assumes the role of trier of fact and, as such, is in the best position to evaluate the evidence and the credibility of witnesses. *Id. See also State v. Carter*, 72 Ohio St.3d 545, 552 (1995). When reviewing a ruling on a motion to suppress, deference is given to the trial court's findings of fact so long as they are supported by competent, credible evidence. *Burnside* at ¶ 8, citing *State v.*

*Fanning*, 1 Ohio St.3d 19 (1982). With respect to the trial court's conclusions of law, however, our standard of review is de novo; therefore, we must decide whether the facts satisfy the applicable legal standard. *Id.*, citing *State v. McNamara*, 124 Ohio App.3d 706, 710 (4th Dist.1997).

{¶8} The Fourth Amendment to the United States Constitution guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures * * *." "'The primary purpose of the Fourth Amendment is to impose a standard of reasonableness upon the exercise of discretion by law enforcement officers in order to "safeguard the privacy and security of individuals against arbitrary [governmental] invasions."'" *State v. Kerr*, 3d Dist. Allen No. 1-17-01, 2017-Ohio-8516, ¶ 12, quoting *State v. Carlson*, 102 Ohio App.3d 585, 592 (9th Dist.1995), quoting *Delaware v. Prouse*, 440 U.S. 648, 99 S.Ct. 1391 (1979). "'The Fourth Amendment does not proscribe all state-initiated searches and seizures; it merely proscribes those which are unreasonable.'" *Id.*, quoting *Florida v. Jimeno*, 500 U.S. 248, 250, 111 S.Ct. 1801 (1991), citing *Illinois v. Rodriguez*, 497 U.S. 177, 110 S.Ct. 2793 (1990). "Thus, '[t]he touchstone of the Fourth Amendment is reasonableness.'" *Id.*, quoting *Jimeno* at 250.

{¶9} Because our decision with respect to Davis's second assignment of error could affect whether we address his first assignment of error or the manner in which we do so, we will first address Davis's argument that Sergeant Feld did not

have jurisdiction to detain him for a traffic violation committed outside of Sergeant Feld's territorial jurisdiction. "Temporary detention of individuals during the stop of an automobile by the police, even if only for a brief period and for a limited purpose, constitutes a 'seizure' of 'persons' within the meaning" of the Fourth Amendment." *Whren v. United States*, 517 U.S. 806, 809-810, 116 S.Ct. 1769 (1996), citing *Prouse* at 653, *United States v. Martinez-Fuerte*, 428 U.S. 543, 556, 96 S.Ct. 3074 (1976), and *United States v. Brignoni-Ponce*, 422 U.S. 873, 878, 95 S.Ct. 2574 (1975). Accordingly, "[a]n automobile stop is * * * subject to the constitutional imperative that it not be 'unreasonable' under the circumstances." *Id.* at 810. An automobile stop based on probable cause that a criminal violation, including a minor traffic violation, has occurred or was occurring "is not unreasonable, and * * * an officer who makes a traffic stop based on probable cause acts in an objectively reasonable manner." *Dayton v. Erickson*, 76 Ohio St.3d 3, 11-12 (1996). In this context, "[p]robable cause 'means less than evidence which would justify condemnation,' so that only the 'probability, and not a prima facie showing of criminal activity is the standard of probable cause.'" *State v. Gonzales*, 3d Dist. Seneca Nos. 13-13-31 and 13-13-32, 2014-Ohio-557, ¶ 18, quoting *State v. George*, 45 Ohio St.3d 325, 329 (1989).

{¶10} Davis argues that because Sergeant Feld is a police officer with the City of Tiffin Police Department, he did not have the jurisdiction to conduct a traffic

stop of the vehicle outside of the city of Tiffin. In support of his position, Davis relies on *State v. Brown*, which states that "[a] traffic stop for a minor misdemeanor made outside a police officer's statutory jurisdiction or authority violates the guarantee against unreasonable searches and seizures established by Article I, Section 14 of the Ohio Constitution." 143 Ohio St.3d 444, 2015-Ohio-2438, ¶ 26. However, based on the totality of the circumstances surrounding this incident, we conclude that although law enforcement officers engaged the vehicle's occupants in a *Terry* stop, they did not engage the vehicle's occupants in a traffic stop.

{¶11} The trial court found that on June 5, 2017, Sergeant Feld, an officer with the Tiffin Police Department, "discovered that a vehicle whose registered owner had a suspended driver's license was traveling on North Sandusky Street in Tiffin, Ohio." (Doc. No. 18). After perceiving that the driver of the vehicle fit the physical description of the registered owner, Sergeant Feld followed the vehicle. (*Id.*). The trial court found that "[t]he vehicle then traveled outside of Sergeant Feld's jurisdiction and made a sudden right turn into a driveway." (*Id.*). Sergeant Feld radioed Officer Justin Nowak ("Officer Nowak"), a fellow officer with the Tiffin Police Department with his observations. (*Id.*).

{¶12} The trial court found that when Officer Nowak arrived he "observed two males in front of the parked car, and a third male walking to the front of the residence." (*Id.*). Officer Nowak also "observed one of the males bent down to the

ground, who then stood up, looked at Officer Nowak, then turned around and made a motion as if throwing something on the ground." (*Id.*). Officer Nowak "recognized the Defendant as one of the males standing in the driveway." (*Id.*). "The occupant of the residence did not know any of the persons from the car and indicated they had not been invited to the residence." (*Id.*). The vehicle occupants were advised of their *Miranda* rights. (*Id.*). Chelsy Tyree ("Tyree"), another occupant of the vehicle, "told officers that the group had driven to Fremont to purchase heroin" and gave the officers two hypodermic needles she had concealed in her bra. (*Id.*).

{¶13} At the suppression hearing, Sergeant Feld testified that on June 5, 2017, he was on duty traveling northbound on North Sandusky Street waiting to turn left at the intersection of North Sandusky Street and Tyber Road when he observed a vehicle approach from the southbound lane of North Sandusky Street and make a right turn onto Tyber Road, essentially crossing directly in front of him. (Feb. 5, 2019 Tr. at 4-7). Sergeant Feld testified that the southbound lane of North Sandusky Street is immediately adjacent to the northbound lane of North Sandusky Street. (*Id.* at 16). The northbound lane of North Sandusky Street is in the city of Tiffin but the southbound lane of North Sandusky Street and the relevant portion of Tyber Road are outside of the city limits and therefore out of Sergeant Feld's jurisdiction. (*Id.*).

{¶14} As Sergeant Feld was stopped at the intersection of North Sandusky Street and Tyber Road, he conducted a license-plate check on the oncoming vehicle. (*Id.* at 7). The license-plate check indicated that the registered owner of the vehicle, Adam Cornett ("Cornett"), had a suspended driver's license. (*Id.*). After verifying that the driver of the vehicle matched the LEADS description of Cornett, Sergeant Feld intended to follow the vehicle which had turned onto Tyber Road. (*Id.*). As Sergeant Feld followed the vehicle, the vehicle turned into the first driveway on the right so quickly that Sergeant Feld was not able to turn in after it. (*Id.*). Sergeant Feld informed Officer Nowak, a fellow officer with the City of Tiffin Police Department who was patrolling traffic in the area, of the possible suspended driver turning into the driveway on Tyber Road. (*Id.* at 6-7). As Sergeant Feld traveled a distance to turn around, Officer Nowak arrived at the scene. (*Id.* at 7-8, 26-27). As Officer Nowak approached the scene, he recognized the residence to be that of Jason Keller ("Keller"). (*Id.* at 28). The residence is located outside the City of Tiffin but inside Seneca County. (*Id.*).

{¶15} Officer Nowak testified that in addition to his work as a police officer with the Tiffin Police Department, he is a member of the Seneca County Drug Task Force METRICH Enforcement Unit ("METRICH Unit"). (*Id.* at 24). According to Officer Nowak, the METRICH Unit is a multi-jurisdictional task force "specifically designated to investigate drug operations and illegal activity throughout Seneca

County." (*Id.*). Officer Nowak testified that as a member of the METRICH Unit, he participates in a dual role as a patrol officer and a narcotics investigator. (*Id.* at 25). As a member of the METRICH Unit, Officer Nowak has additional drug-related and search-and-seizure training and is aware of all drug intelligence that comes in through the METRICH Unit. (*Id.* at 25-26).

{¶16} Officer Nowak testified that he learned from Sergeant Feld that Cornett was the suspected driver of the vehicle. (*Id.* at 28-29). Officer Nowak testified that he knew of Cornett through drug intelligence and had several encounters with Cornett through his work in law enforcement. (*Id.* at 29). Officer Nowak further testified that although he never came into personal contact with Davis before June 5, 2017, Officer Nowak was familiar with Davis through his name and photograph because Davis was a suspect in an ongoing burglary investigation. (*Id.* at 26). Officer Nowak was also familiar with Davis as an individual suspected of drug activity throughout Seneca County. (*Id.* at 26-27).

{¶17} Officer Nowak stated that as he pulled in behind Cornett's vehicle, he saw Davis and Tommy Halcomb, Jr. ("Halcomb") located in front of the vehicle. (*Id.* at 30). Officer Nowak testified that he recognized Halcomb from previous interactions he had with him regarding drug-related activities. (*Id.* at 30-31). Officer Nowak testified that as he pulled into the driveway, he observed Davis standing in close proximity to Halcomb, who was bent over. (*Id.* at 31). Halcomb

then looked over his shoulder at Officer Nowak and stood up and made a motion consistent with throwing something to the ground. (*Id.*). Officer Nowak testified that in his experience as a law enforcement officer, persons that he was stopping or about to detain have attempted to hide or conceal items to avoid discovery, including by throwing items to try to get rid of them before law enforcement makes contact with them. (*Id.* at 32-33).

{¶18} Officer Nowak made contact with Davis and Halcomb and then located Tyree, Davis's girlfriend, in the rear passenger seat of the vehicle. (*Id.* at 33). Officer Nowak also recognized Tyree as an individual named on drug-activity intelligence information and removed Tyree from the vehicle. (*Id.* at 33-34).

{¶19} Sergeant Feld arrived on the scene and found Cornett, the driver of the vehicle, at the rear of the residence knelt down beside an air conditioning unit and appearing to be attempting to hide. (*Id.* at 7-8, 30). As Sergeant Feld accompanied Cornett to the front of the house, Keller came out of the residence and told law enforcement that he did not know Davis, Cornett, Halcomb, or Tyree and did not invite them on the property. (*Id.* at 8). Keller stated that Cornett was knocking on the door of his property and when Officer Nowak pulled in the driveway, Cornett ran to the rear of the residence. (*Id.* at 30).

{¶20} Davis and Halcomb were placed in handcuffs and secured at the scene for officer safety purposes while Sergeant Feld retrieved Cornett from the rear of

the residence. (*Id.*). Officer Nowak stated that he believed that investigatory detainment of Halcomb and Davis was appropriate because initially there were four total subjects and only two law enforcement officers on the scene. (*Id.* at 35). Moreover, they had knowledge that Davis was a suspect for burglary, Cornett had already attempted to run and hide, and Officer Nowak observed Halcomb throw something as Officer Nowak pulled into the driveway. (*Id.* at 35-36). Moreover, all four of the subjects were known to the officers through drug activity-intelligence. (*Id.* at 36).

{¶21} Officer Nowak spoke to Tyree who claimed that she did not know why Cornett had pulled into Keller's driveway, but admitted that she, Davis, Halcomb, and Cornett were returning to town after traveling to Fremont to purchase heroin. (*Id.* at 34). Tyree told Officer Nowak that Cornett and Halcomb were shooting up heroin while driving down the road and that once they pulled into Keller's driveway, Cornett gave Tyree two hypodermic syringes and asked her to hide them. (*Id.* at 34-35). Tyree turned over the syringes to Officer Nowak. (*Id.* at 35). Tyree also informed Officer Nowak that two spoons were hidden underneath the driver's seat of the vehicle. (*Id.*).

{¶22} When the Seneca County Sheriff's Department arrived on the scene, they conducted a search of the vehicle where they found a marijuana pipe belonging to Halcomb and spoons located under the driver's seat. (Feb. 12, 2019 Tr. at 13-

14). Additionally, they discovered a small bag of suspected heroin in an area of grass near the location where Davis and Halcomb were located upon Officer Nowak's arrival to the scene. (*Id.* at 14).

{¶23} Officer Nowak asked the four suspects if he could search them. (*Id.* at 10-11). Davis was searched and inside a dollar bill located in his wallet, Officer Nowak discovered a white-powder substance that Davis admitted was heroin. (*Id.* at 11-12).

{¶24} At no point during the encounter did Officer Nowak or Sergeant Feld activate the lights on their patrol vehicles. (*Id.* at 27); (Feb. 5, 2019 Tr. at 17). At the conclusion of the encounter, Davis was released from the handcuffs and his detention ended. (Feb. 12, 2019 Tr. at 15). According to Officer Nowak, the entire encounter lasted approximately 25 to 30 minutes. (*Id.* at 13).

{¶25} Thus, we find that the trial court's findings of fact are based on competent, credible evidence.

{¶26} After reviewing the record, we conclude that neither Officer Nowak nor Sergeant Feld engaged the vehicle's occupants in a traffic stop. Neither Officer Nowak nor Sergeant Feld activated their overhead lights or used any other demonstration of authority to cause the vehicle to stop. *See State v. Gonzales*, 9th Dist. Medina No. 18CA0072-M, 2019-Ohio-1928, ¶ 15 (noting that the fact that the engaging officer did not activate his overhead lights or use another show of authority

to cause the vehicle to stop is a factor indicating that the law enforcement officer did not conduct a traffic stop on the vehicle).    Rather, when Officer Nowak, who was the first law enforcement officer to arrive, pulled up on the scene, the vehicle was already stopped in Keller's driveway.  Moreover, three of the four passengers were no longer in the vehicle—Davis and Halcomb were located nearby the vehicle and Cornett was hiding at the back of Keller's property.  Furthermore, it was Officer Nowak and not Sergeant Feld that ultimately initiated contact with the vehicle's occupants.  Because this incident was not a traffic stop, Davis's reliance on *Brown* is misplaced as *Brown* specifically concerns police authority to conduct traffic stops. *See Gonzales* at ¶ 15. Rather, the totality of the circumstances surrounding the incident lead us to conclude that Officer Nowak engaged the vehicle's occupants in a *Terry* stop that was not a traffic stop.

{¶27} Although we have concluded that the encounter with Davis was not a traffic stop, we must still determine whether Officer Nowak had the authority to engage Davis and the other vehicle occupants in a *Terry* stop outside of the city of Tiffin.

{¶28} The protections of the Fourth Amendment to the United States Constitution extend to brief investigative stops that fall short of traditional arrest. *State v. Hairston*, 156 Ohio St.3d 363, 2019-Ohio-1622, ¶ 9, citing *United States v. Arvizu*, 534 U.S. 266, 273, 122 S.Ct. 744 (2002).  The United States Supreme Court

has analogized a typical traffic stop to a *Terry* stop. *State v. Hemmer*, 3d Dist. Logan No. 8-99-20, 2000 WL 681651, *3 (May 25, 2000), citing *Berkemer v. McCarty*, 468 U.S. 420, 104 S.Ct. 3138 (1984). However, not all *Terry* stops are traffic stops. "An officer may perform [a *Terry* stop] when the officer has a reasonable suspicion based on specific and articulable facts that criminal behavior has occurred or is imminent." *Hairston* at ¶ 9, citing *Terry v. Ohio*, 392 U.S. 1, 30, 88 S.Ct. 1868 (1968). "And when the officer is 'justified in believing' that an individual may be 'armed and presently dangerous,' the officer may conduct a limited protective search of the individual for concealed weapons." *Id.*, citing *Terry* at 24 and *Adams v. Williams*, 407 U.S. 143, 146, 92 S.Ct. 1921 (1972).

{¶29} "The reasonable-suspicion standard is less demanding than the probable-cause standard used when analyzing an arrest." *Id.* at ¶ 10, citing *United States v. Sokolow*, 490 U.S. 1, 7, 109 S.Ct. 1581 (1989). "The determination whether an officer had reasonable suspicion to conduct a *Terry* stop must be based on the totality of circumstances 'viewed through the eyes of the reasonable and prudent police officer on the scene who must react to events as they unfold.'" *Id.*, quoting *State v. Andrews*, 57 Ohio St.3d 86, 87-88 (1991). "An assessment of the totality of the circumstances 'does not deal with hard certainties, but with probabilities.'" *Id.*, citing *United States v. Cortez*, 449 U.S. 411, 418, 101 S.Ct. 690 (1981). The cumulative facts are considered "'not in terms of library analysis by

scholars, but as understood by those versed in the field of law enforcement.'" *Id.*, quoting *Cortez* at 418.

{¶30} Here, the cumulative facts support the conclusion that Officer Nowak engaged Davis in a proper *Terry* stop. First, as Officer Nowak approached the vehicle passengers, he observed a number of suspicious behaviors. As Officer Nowak approached the scene, he witnessed Halcomb throw an object upon seeing Officer Nowak. Moreover, Officer Nowak recognized Davis as a suspect in a burglary investigation and recognized Davis and Halcomb through drug-activity intelligence. Additionally, Officer Nowak was aware that Sergeant Feld witnessed Cornett make evasive movements. Officer Nowak was also aware that none of the individuals resided at the residence. Moreover, shortly after arriving on the scene, Officer Nowak learned that Cornett had fled to the back of the house as Officer Nowak arrived on the scene. Given the cumulative facts, we find that Officer Nowak would have had reasonable suspicion to justify detaining Davis for a *Terry* stop.

{¶31} Moreover, while Officer Nowak is police officer for the city of Tiffin, he is also assigned to the METRICH Unit. As Office Nowak testified, the METRICH Unit has jurisdiction throughout Seneca County to investigate drug-related criminal activity. Accordingly, Officer Nowak had the jurisdiction to initiate

a *Terry* stop of Davis on suspicion of drug-related activity in Seneca County in his capacity as an investigator with the METRICH Unit.

**{¶32}** Davis argues that the law enforcement officers exceeded the scope of their authority by placing him in handcuffs. However, a police officer may restrain an individual's movement with handcuffs during a *Terry* stop if the facts warrant it. "'Force may be used, even in the form of handcuffs, during a *Terry* stop if it is reasonably necessary and is limited in scope and duration.'" *In re E.H.*, 8th Dist. Cuyahoga No. 107614, 2019-Ohio-2572, ¶ 36, quoting *State v. White*, 2d Dist. Montgomery No. 18731, 2002 WL 63294 (Jan. 18, 2002), fn.1, and citing *United States v. Chavez*, 812 F.2d 1295, 1301 (10th Cir.1987) and *United States v. Bautista*, 684 F.2d 1286 (9th Cir.1982). "'Handcuffing a suspect in the course of an investigative detention does not necessarily turn that investigative detention into an arrest, so long as handcuffing is reasonable under the circumstances; for instance, to maintain the status quo and prevent flight.'" *Id.*, quoting *State v. Carter*, 2d Dist. Montgomery No. 21145, 2006-Ohio-2823, ¶ 20. "'Whether handcuffing or other methods of detention are reasonable [during a *Terry* stop] "depends on whether the restraint was temporary and lasted no longer than was necessary to effectuate the purpose of the stop, and whether the methods employed were the lest intrusive means reasonably available to verify the officers' suspicions in a short period of time."'" *Id.* at ¶ 37, quoting *State v. Payne*, 2d Dist. Montgomery No. 13898, 1994

WL 171215, *4 (May 4, 1994), quoting *United States v. Glenna*, 878 F.2d 967 (7th Cir.1989). Moreover, "[i]t is well-recognized that during an investigative stop, a police officer is entitled to ensure their own safety by handcuffing the detainee should the situation warrant it." *State v. Feliciano*, 11th Dist. Lake No. 2004-L-205, 2006-Ohio-1678, ¶ 27, citing *Terry*, 392 U.S., *State v. Shirey*, 5th Dist. Fairfield No. 04 CA 68, 2005-Ohio-5952, *State v. White*, 2d Dist. Montgomery No. 18731, 2002-Ohio-262, *State v. Whitfield*, 7th Dist. Mahoning No. 99 CA 111, 2000-Ohio-2596, *State v. Pickett*, 8th Dist. Cuyahoga No. 76295, 2000 WL 1060653 (Aug. 3, 2000), *State v. Boykins*, 1st Dist. Hamilton No. C-990101, 1999 WL 979168 (Oct. 29, 1999).

**{¶33}** Here, the facts justify Davis's restraint in handcuffs during the *Terry* stop. At the time Davis was handcuffed, there were four suspects and only two law enforcement officers on the scene. Additionally, one of the suspects, Cornett, had fled upon seeing Officer Nowak arrive at the scene. Moreover, Officer Nowak observed Halcomb throw an object. Furthermore, Sergeant Feld had witnessed Cornett make evasive movements with his vehicle, such as turning suddenly into the first available driveway, when Sergeant Feld followed him in his vehicle. Moreover, all four subjects were known to Officer Nowak through drug-activity intelligence.

{¶34} As the encounter unfolded, officers learned additional information to justify Davis's continued detainment in handcuffs. For instance, the officers received confirmation from Keller that he did not know the suspects and did not invite them to his residence. Additionally, Officer Nowak learned from Tyree that the group was returning from a trip to Fremont to purchase heroin. Moreover, Tyree turned over drug paraphernalia to Officer Nowak that she was hiding on her person. Finally, the entire encounter only lasted for approximately 25 to 30 minutes, at which time the handcuffs were removed and Davis was free to leave. Based upon these facts, we conclude that the officers' acts were reasonable under the circumstances.

{¶35} Having concluded that Officer Nowak had jurisdiction to conduct a *Terry* stop of Davis and that a *Terry* stop was justified upon the facts and circumstances of the encounter, we next discuss Davis's first assignment of error in which he argues that the trial court erred by denying his motion to suppress evidence because he did not voluntarily consent to the search, and the search was not warranted by exigent circumstances. For the reasons that follow, we disagree.

{¶36} "[N]either a warrant nor probable cause is needed for a search where the person subject to the search gives consent." *State v. Marland*, 3d Dist. Logan No. 8-16-15, 2017-Ohio-4353, ¶ 24, citing *State v. Posey*, 40 Ohio St.3d 420, 427 (1988), citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 219, 93 S.Ct 2041 (1973).

Whether consent is voluntary or is instead the product of duress or coercion is a question of fact to be determined based on the totality of the circumstances. *State v. LaPrarie*, 2d Dist. Greene No. 2010CA-0009, 2011-Ohio-2184, ¶ 50. Factors to be considered in determining whether consent is voluntarily given include: (1) the suspect's custodial status and the length of the detention; (2) whether consent was given in public or at a police station; (3) the presence of threats, promises, or coercive police procedures; (4) the words and conduct of the suspect; (5) the suspect's awareness of his right to refuse consent and his status as a "newcomer to the law"; and (6) the suspect's education and intelligence. *State v. Fry*, 4th Dist. Jackson No. 03CA26, 2004-Ohio-5747, ¶ 23, citing *Schneckloth* at 248-249. Consent is not rendered involuntarily or coerced simply because police indicate a willingness to obtain a warrant in the event consent is withheld. *Marland* at ¶ 27, citing *State v. Dunwoody*, 5th Dist. Licking No. 2004CA49, 2005-Ohio-219, ¶ 19. Here, Davis does not argue that his consent to the search was not voluntary; rather, he contends that he did not give consent to the search at all.

{¶37} At the suppression hearing, Officer Nowak testified that after arriving on the scene, he and Sergeant Feld detained Davis, Halcomb, Tyree, and Cornett for investigatory purposes. (Feb. 12, 2019 Tr. at 9). Officer Nowak stated that for officer safety purposes, the four individuals were detained in handcuffs. (*Id.*). After Officer Nowak handcuffed Davis, he conducted a pat down. (*Id.* at 22). During this

pat down, Officer Nowak testified that he felt Davis's wallet in his pant pocket but did not remove the wallet. (*Id.* at 28-29). Officer Nowak testified that he asked Davis and the others in the group whether there was anything illegal or that could harm the officers that was on their persons. (*Id.* at 23). The group responded that they did not have anything illegal or potentially harmful on their persons. (*Id.*).

{¶38} Officer Nowak testified that he then asked the group, as a whole, whether they consented for him to search their persons. (*Id.*). Officer Nowak testified that in response, Davis verbally indicated that he consented to the search of his person. (*Id.* at 23-24). Officer Nowak was unable to recall the exact words that Davis used to acknowledge his consent to search his person. (*Id.* at 24).

{¶39} Officer Nowak then commenced the search of Davis. (*Id.*). During the search, Officer Nowak removed a wallet from Davis's rear pant pocket. (*Id.* at 11). Officer Nowak testified that before he opened the wallet, he asked Davis if he could look in the wallet. (*Id.* at 12). When he opened the wallet, Officer Nowak found a folded dollar bill inside. (*Id.* at 11). Officer Nowak testified that before he unfolded the dollar bill, he asked Davis "if there was going to be anything in there * * * that would harm an officer." (*Id.*). Davis then admitted that there was heroin inside the dollar bill. (*Id.* at 11-12). Officer Nowak unfolded the dollar bill and observed a white powder located therein. (*Id.* at 12). Officer Nowak testified

that if Davis had not consented to the search, he would not have searched him. (*Id.* at 36).

{¶40} On the other hand, Davis testified that after Officer Nowak patted them down for weapons, Officer Nowak asked the group as a whole whether they consented to a search. (*Id.* at 46). Davis stated that nobody in the group, including himself, answered the question. (*Id.* at 48, 50). Davis also denied giving any kind of nonverbal gesture to indicate his consent. (*Id.*). Rather, Davis stated that after Officer Nowak asked the group for consent to search he just "stood there." (*Id.* at 48). However, according to Davis, Officer Nowak proceeded to search him anyway. (*Id.* at 45-46). Davis further denied that Officer Nowak asked permission before searching his wallet. (*Id.* at 45). Davis acknowledged that he admitted to Officer Nowak that the dollar bill located in his wallet contained heroin. (*Id.* at 46).

{¶41} Davis argues that the trial court erred by determining that he consented to a search of his person because Officer Nowak's testimony is "highly suspicious." (Appellant's Brief at 11). Specifically, Davis argues that Officer Nowak's testimony that Davis consented to a search is suspect because Officer Nowak did not include the fact of Davis's consent to the search in his police report of the incident. (*Id.* at 11-12).

{¶42} With respect to the issue of consent, the trial court found that "[t]he Defendant consented to a search of his person by Officer Nowak." (Doc. No. 18).

{**¶43**} At the suppression hearing, Officer Nowak admitted that he did not include the fact of Davis's consent to the search in his report of the incident, which was written shortly following the encounter. (Feb. 12, 2019 Tr. at 24-25, 28). (*See* Defendant's Ex. B). However, Officer Nowak testified that he conducts hundreds of stops every year and follows a standard procedure during each stop. (*Id.* at 32-33). Officer Nowak stated that part of his standard procedure includes asking for consent to search a person and that he follows this standard procedure in every stop of a similar nature. (*Id.* at 33). Officer Nowak stated that due to his heavy case load, when he writes reports on investigatory stops, he does not always specifically lay out every step he takes. (*Id.* at 33-34). Officer Nowak testified that although the fact of consent to a search is often included in the police report of an incident, police officers, including himself, do not always specifically include this standard protocol when writing their reports because it is standard procedure that is always followed and is therefore implied. (*Id.* at 26, 33-34).

{**¶44**} After reviewing the record, we find the trial court's finding that Davis consented to the search was based on competent, credible evidence. Despite the conflicting testimonies, the trial court considered the evidence presented at the suppression hearing and found Officer Nowak's testimony to be credible. As previously indicated, when reviewing a ruling on a motion to suppress, this court gives deference to the trial court's findings of fact so long as they are supported by

competent, credible evidence. *See Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, at ¶ 8. The trial court was therefore free to believe all, part, or none of Officer Nowak's testimony and Davis's testimony. *See State v. Coleman*, 12th Dist. Fayette No. CA2011-09-020, 2012-Ohio-3630, ¶ 19. "[W]e defer to the credibility determinations made by the trial court at a suppression hearing." *State v. Klump*, 12th Dist. Brown No. CA2000-01-001, 2000 WL 744981, *2 (June 12, 2000). *See State v. Deluca*, 12th Dist. Butler No. CA2016-03-055, 2017-Ohio-1235, ¶ 17 (deferring to the trial court's determination that the law enforcement officer was credible despite referencing additional facts during his testimony that were not included in his police report).

{¶45} Davis further argues that the trial court erred by denying his motion to suppress because Officer Nowak exceeded the limits of a *Terry* stop by searching his person and his wallet. (Appellant's Brief at 14-16). However, Davis's arguments are premised on the assumption that he did not consent to the search. As we have concluded that the trial court's finding that Davis consented to the search was based on competent, credible evidence, we need not address these arguments. Likewise, as Davis consented to the search, we need not address Davis's argument that exigent circumstances did not exist to necessitate the search of his person.

{¶46} Davis further argues that even if he did consent to the search, the trial court should have suppressed the fruits of that search because they did not have

reasonable suspicion to detain Davis. (*Id.* at 12). Davis characterizes the stop as an "arrest" and argues that law enforcement officers did not possess probable cause to arrest Davis. (*Id.* at 12-13). However, as detailed in our discussion above, despite the fact that Davis was placed in handcuffs during the encounter, the incident constituted a *Terry* stop and not an arrest or traffic stop. Thus, the trial court did not err in denying Davis's motion to suppress the evidence obtained during the search.

{¶47} Accordingly, for the aforementioned reasons, Davis's first and second assignments of error are overruled.

{¶48} Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

***Judgment Affirmed***

**SHAW, P.J. and WILLAMOWSKI, J., concur.**

**/jlr**